## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| IN RE: BOSTON SCIENTIFIC | : | |
| CORP. PELVIC REPAIR SYSTEM | : | MDL 2326 |
| PRODUCTS LIABILITY | : | |
| LITIGATION | : | |
| ──────────────────── | : | |
| | : | |
| THIS DOCUMENT RELATES TO | : | |
| ALL CASES | : | |
| | : | |

## SPECIALLY APPEARING DEFENDANT PROXY BIOMEDICAL, LTD.'S
## OBJECTIONS AND SECOND SUPPLEMENTAL ANSWERS
## TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Specially appearing defendant Proxy Biomedical Ltd. ("Proxy Ltd."), hereby objects to and supplements its answers to Plaintiffs' First Set of Interrogatories as follows:

### PRELIMINARY STATEMENT

These objections and supplemental answers are made subject to the stipulated non-waiver of Proxy Ltd.'s jurisdictional defense as communicated and agreed between counsel for the parties on December 4-5, 2012, and acknowledged by the Court on December 6, 2012. They are solely for the purpose of, and in relation to, this action. Each answer is given subject to all appropriate objections (including, but not limited to, objections concerning relevancy, materiality, privilege, and admissibility) which would require the exclusion of any statement or matter contained herein if the question were asked of, or any statement contained herein were made by, a witness present and testifying in court. All such objections and grounds for such objections are reserved and may be interposed at the time of trial or hearing.

Proxy Ltd. has not yet completed its investigation of the facts relating to this incident and has not completed its preparation for hearing or trial. Consequently, the following responses are given without prejudice to the answering party's right to produce, at or prior to the time of

hearing or trial, subsequently discovered evidence relating to the proof of facts subsequently discovered to be material.

No admission of any nature whatsoever is to be implied or inferred. The fact that any question herein has been answered should not be taken as an admission, or concession of the existence of any facts set forth or assumed by such questions, or that such answer constitutes evidence of any facts set forth or assumed.

## GENERAL OBJECTIONS

Proxy Ltd. makes the following general objections to Plaintiffs' First Set of Interrogatories, which are incorporated by reference into each of Proxy Ltd.'s answers and supplemental answers to each specific Interrogatory. The assertion of the same, similar or additional objections in the individual objections to these Interrogatories, or the failure to assert any additional objections to any Interrogatory, does not waive any of Proxy Ltd.'s general objections. Proxy Ltd. reserves such objections. Proxy Ltd.'s general objections are as follows:

1.      Proxy Ltd. objects to all the Interrogatories to the extent they seek information exempt from or immune to discovery under applicable law, rules, and/or statutes, including, but not limited to, information protected by the attorney-client privilege, work product doctrine, consulting expert opinions, witness statements, party communications, and any other privileged and/or protected information. In addition, the inadvertent disclosure of privileged or protected information shall not constitute a waiver of any applicable privilege or protection afforded;

2.      Proxy Ltd. objects to the competency, relevancy, materiality and admissibility of these Interrogatories, the answers, and their subjects;

3.      Proxy Ltd. objects to the vagueness, ambiguity, or other infirmity in the form of the Interrogatories;

4.      Proxy Ltd. objects to the extent the Interrogatories seek Proxy Ltd.'s trade secrets, propriety information, and/or commercially sensitive information that are protected from disclosure;

5.     Proxy Ltd. objects to the extent the Interrogatories seek information that exceeds the scope of permissible discovery and is neither relevant to the subject matter of the dispute nor reasonably calculated to lead to the discovery of admissible evidence;

6.     Proxy Ltd. objects to Plaintiffs' definition for the terms "Defendant," "you," and "your" as synonyms and purporting to include all affiliated business entities as well as any officer, attorney, agents, and other representatives of Proxy Ltd.  Proxy Ltd. responds only on its own behalf; and

7.     Proxy Ltd. objects to the extent the Interrogatories are duplicative of each other and of other discovery requests answered by Proxy Ltd.

Subject to, consistent with, and without waiver of the general objections, Proxy Ltd. supplements its answers as follows:

## INTERROGATORY OBJECTIONS AND SUPPLEMENTAL ANSWERS

Interrogatory No. 1:  Please state the number of units of Polyform mesh sold in the United States since its clearance by the FDA through the date of your response to this Interrogatory.

Answer:  **Proxy Ltd. restates its general objections herein as if by reference.  Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine.  Proxy Ltd. objects to the extent this Interrogatory improperly seeks confidential and proprietary information.  Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and is not reasonably limited in time and scope.  Further, Proxy Ltd. objects to the extent this Interrogatory seeks information that is within the possession of third parties over whom Proxy Ltd. has no control. Subject to and without waiving the foregoing objections, Proxy Ltd. responds that it does not sell Polyform Synthetic Mesh ("Polyform Mesh") in the United States. Rather, Proxy Ltd. sells Polyform Mesh, a name trademarked by Boston Scientific Corp. ("BSC"), to BSC. Those sales occur in Galway, Ireland, pursuant to orders BSC sends to Galway, Ireland.  Polyform Mesh is shipped as a finished product from Galway, Ireland, to BSC in Quincy, Massachusetts. Proxy Ltd. is without information as to the number of units of Polyform Mesh sold by BSC in the United States or globally. Proxy Ltd. has sold approximately 14,900 units of Polyform Mesh to BSC from the date in August 2005 that Proxy Ltd. began manufacturing it for BSC through November 30, 2012.**

Interrogatory No. 2:  Please state the total dollar amount paid to or received by Proxy from sales of Polyform mesh in the United States from the date of the first sale of the product through the date of your response to this Interrogatory.

**Answer:  Proxy Ltd. restates its general objections herein as if by reference.  Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine.  Proxy Ltd. objects to the extent this Interrogatory improperly seeks confidential and proprietary information.  Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, is not reasonably limited in time and scope and is misleading insofar as it improperly assumes Proxy Ltd. sells Polyform Mesh in the United States.  Subject to and without waiving the foregoing objections, Proxy Ltd. responds that no money has been paid to or received by Proxy Ltd. from sales of Polyform Mesh in the United States.  Proxy Ltd. sells Polyform Mesh to BSC.  Those sales occur in Ireland pursuant to BSC's monthly orders to Proxy Ltd. under BSC's Distribution and Supply Agreement and subsequent amendments.  Proxy Ltd. has been paid approximately $855,000 USD by BSC for Polyform Mesh manufactured for and sold to BSC from the date in August 2005 that Proxy Ltd. began manufacturing it for BSC through November 30, 2012.**

Interrogatory No. 3:  Please state the number of units of Polyform mesh sold since its clearance by the FDA through the date of your response to this Interrogatory in each of the following States, respectively:  Georgia;  West Virginia;  Alabama;  Tennessee;  Arkansas; Pennsylvania; California; and Michigan.

**Answer:  Proxy Ltd. restates its general objections herein as if by reference.  Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine.  Proxy Ltd. objects to the extent this Interrogatory improperly seeks confidential and proprietary information.  Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, is not reasonably limited in time and scope, and is misleading insofar as it improperly assumes Proxy Ltd. sells Polyform Mesh in the United States.  Further, Proxy Ltd. objects to the extent this Interrogatory seeks information that is within the possession of third parties over whom Proxy Ltd. has no control. Subject to and without waiving the foregoing objections, Proxy Ltd. responds that it sells Polyform Mesh to BSC. Those sales occur in Galway, Ireland. Proxy Ltd. manufactures Polyform Mesh in Ireland, then ships it to BSC's distribution center in Quincy, Massachusetts. Proxy Ltd. has no involvement in the sale or marketing of Polyform Mesh after it is shipped to BSC.  Proxy Ltd. does not sell Polyform Mesh in the United States and is without information as to the number of units of Polyform Mesh sold by BSC, if any, in Georgia, West Virginia, Alabama, Tennessee, Arkansas, Pennsylvania, California, or Michigan.**

4

Interrogatory No. 4:  Please state the number of complaints of injury, complication or adverse events relating to the Polyform mesh reported to or otherwise known to Proxy through the date of your response to this Interrogatory that originated from the following States, respectively: Georgia; West Virginia; Alabama; Tennessee; Arkansas; Pennsylvania; California; and Michigan.

**Answer:  Proxy Ltd. restates its general objections herein as if by reference.  Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine and attorney-client privilege.  Proxy Ltd. objects to the extent this Interrogatory improperly seeks confidential and proprietary information. Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and is not reasonably limited in time and scope.  Further, the information sought by Interrogatory No. 4 is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Proxy Ltd. responds that BSC transmits only reports of adverse events concerning Polyform Mesh to Proxy Ltd. Based on the information presently available to it, the following is a summary of the adverse events concerning Polyform Mesh from the specified states during August 2005 through November 30, 2012:**

| GA | WV | AL | TN | AR | PA | CA | MI |
|----|----|----|----|----|----|----|----|
| 2  | 1  | 2  | 5  | 0  | 3  | 0  | 0  |

**In some instances, information concerning the geographical origin of the event was not reported.**

Interrogatory No. 5:  Please state the number of units of the Uphold device sold in the United States since its clearance by the FDA through the date of your response to this Interrogatory.

**Answer:  Proxy Ltd. restates its general objections herein as if by reference.  Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine.  Proxy Ltd. objects to the extent this Interrogatory improperly seeks confidential and proprietary information.  Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, is not reasonably limited in time and scope, and is misleading insofar as it improperly assumes Proxy Ltd. sells the Uphold device.  Further, Proxy Ltd. objects to the extent this Interrogatory seeks information that is within the possession of third parties over whom Proxy Ltd. has no control.  Moreover, the information sought in Interrogatory No. 5 is**

neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Proxy Ltd. responds that it does not manufacture or sell the Uphold device. Proxy Ltd. does not hold the 510k clearance for the Uphold device. Proxy Ltd. sells bulk non-sterile polypropylene mesh that has physical properties equivalent to Polyform Mesh as a component for the Uphold device to Medventure, a contract manufacturer for BSC. Medventure places orders with Proxy Ltd. in Galway, Ireland, based on information it receives from BSC. Medventure incorporates the bulk, non-sterile polypropylene mesh as a component into the Uphold device in Jeffersonville, Indiana, and sells the finished product back to BSC. Proxy Ltd. has sold approximately 32,500 units of this bulk, non-sterile polypropylene mesh to Medventure from the date in 2008 that Proxy Ltd. began manufacturing bulk, non-sterile polypropylene mesh for Medventure through November 30, 2012. Proxy Ltd. is without information as to how many of those units Medventure incorporated into an Uphold device for sale by BSC in the United States or how many Uphold devices BSC has sold in the United States.

Interrogatory No. 6: Please state the total dollar amount paid to or received by Proxy from sales of the Uphold device in the United States from the date of the first sale of the product through the date of your response to this Interrogatory.

Answer: Proxy Ltd. restates its general objections herein as if by reference. Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine. Proxy Ltd. objects to the extent this Interrogatory improperly seeks confidential and proprietary information. Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, is not reasonably limited in time and scope, and is misleading insofar as it improperly assumes Proxy Ltd. sells the Uphold device. Moreover, the information sought in Interrogatory No. 6 is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Proxy Ltd. responds that it does not manufacture or sell the Uphold device. Rather, Proxy Ltd. sells bulk non-sterile polypropylene mesh as a component to Medventure. Those sales occur in Galway, Ireland. Accordingly, no money has been paid to or received by Proxy Ltd. from sales of the Uphold device in the United States. Moreover, Proxy Ltd. is not aware of the number of Uphold devices sold by BSC in the United States or globally and is therefore unable to respond fully to this Interrogatory. Proxy Ltd. has been paid approximately $1.02 million USD in Ireland by Medventure for this bulk polypropylene mesh manufactured and sold to Medventure.

Interrogatory No. 7: Please state the number of units of the Uphold device sold since its clearance by the FDA through the date of your response to this Interrogatory in each of the

following States, respectively: Georgia; West Virginia; Alabama; Tennessee; Arkansas; Pennsylvania; California; and Michigan.

**Answer:  Proxy Ltd. restates its general objections herein as if by reference.  Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine.  Proxy Ltd. objects to the extent this Interrogatory improperly seeks confidential and proprietary information.  Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, is not reasonably limited in time and scope, and is misleading insofar as it improperly assumes Proxy Ltd. sells the Uphold device.  Further, Proxy Ltd. objects to the extent this Interrogatory seeks information that is within the possession of third parties over whom Proxy Ltd. has no control.  Moreover, the information sought in Interrogatory No. 7 is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Proxy Ltd. responds that it sells bulk polypropylene mesh as a component to Medventure. Those sales occur in Galway, Ireland. Proxy Ltd. does not sell the Uphold device. Proxy Ltd. is without information as to the number of Uphold devices sold by BSC in Georgia, West Virginia, Alabama, Tennessee, Arkansas, Pennsylvania, California, or Michigan.**

Interrogatory No. 8:  Please state the number of complaints of injury, complication or adverse events relating to the Uphold device reported to or otherwise known to Proxy through the date of your response to this Interrogatory that originated from the following States, respectively: Georgia; West Virginia; Alabama; Tennessee; Arkansas; Pennsylvania; California; and Michigan.

**Answer:  Proxy Ltd. restates its general objections herein as if by reference.  Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine or attorney-client privilege.  Proxy Ltd. objects to the extent this Interrogatory improperly seeks confidential and proprietary information.  Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, is not reasonably limited in time and scope, and is misleading insofar as it improperly assumes Proxy Ltd. is the manufacturer of the Uphold device.  Further, Proxy Ltd. objects to the extent this Interrogatory seeks information that is within the possession of third parties over whom Proxy Ltd. has no control.  Moreover, the information sought in Interrogatory No. 8 is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Proxy Ltd. responds that it does not hold the 510(k) for the Uphold device and is not the manufacturer of the Uphold device.  BSC does not transmit reports of adverse events concerning the Uphold device to Proxy Ltd. As BSC is the manufacturer and 510(k) holder for the Uphold**

device, Proxy Ltd. expects that BSC manages adverse event reports related to the Uphold device.  Proxy Ltd. is without information as to the number of adverse events relating to the Uphold device received by BSC that originated in Georgia, West Virginia, Alabama, Tennessee, Arkansas, Pennsylvania, California, or Michigan.

Interrogatory No. 9:  Please state the number of units of the Pinnacle device sold in the United States since its clearance by the FDA through the date of your response to this Interrogatory.

**Answer:  Proxy Ltd. restates its general objections herein as if by reference.  Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine.  Proxy Ltd. objects to the extent this Interrogatory improperly seeks confidential and proprietary information.  Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, is not reasonably limited in time and scope, and is misleading insofar as it improperly assumes Proxy Ltd. sells the Pinnacle device.  Further, Proxy Ltd. objects to the extent this Interrogatory seeks information that is within the possession of third parties over whom Proxy Ltd. has no control.  Moreover, the information sought in Interrogatory No. 9 is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Proxy Ltd. responds that it does not manufacture or sell the Pinnacle device.  Proxy Ltd. does not hold the 510k for the Pinnacle device.  Proxy Ltd. sells bulk non-sterile polypropylene mesh that has physical properties equivalent to Polyform Mesh as a component for the Pinnacle device to Medventure, a contract manufacturer for BSC. Medventure places orders with Proxy Ltd. in Galway, Ireland, based on information it receives from BSC. Medventure incorporates the bulk, non-sterile polypropylene mesh as component into its Pinnacle device in Jeffersonville, Indiana, and sells the finished product back to BSC. Proxy Ltd. has sold approximately 50,000 units of this bulk, non-sterile polypropylene mesh from the date in 2007 that Proxy Ltd. began manufacturing it through November 30, 2012. Proxy Ltd. is without information as to how many of those units BSC incorporated into a Pinnacle device or how many Pinnacle devices BSC sold in the United States.**

Interrogatory No. 10:  Please state the total dollar amount paid to or received by Proxy from sales of the Pinnacle device in the United States from the date of the first sale of the product through the date of your response to this Interrogatory.

**Answer:  Proxy Ltd. restates its general objections herein as if by reference.  Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine.  Proxy Ltd. objects to the extent this Interrogatory**

improperly seeks confidential and proprietary information.  Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, is not reasonably limited in time and scope, and is misleading insofar as it improperly assumes Proxy Ltd. sells the Pinnacle device. Further, Proxy Ltd. objects to the extent this Interrogatory seeks information that is within the possession of third parties over whom Proxy Ltd. has no control.  Moreover, the information sought in Interrogatory No. 10 is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Proxy Ltd. responds that it does not manufacture or sell the Pinnacle device.  Rather, Proxy Ltd. sells bulk non-sterile polypropylene mesh in different configurations as a component to BSC. Those sales occur in Galway, Ireland.  Accordingly, no money has been paid to or received by Proxy Ltd. from sales of the Pinnacle device in the United States.  Moreover, Proxy Ltd. is not aware of the number of Pinnacle devices sold by BSC in the United States or globally and is therefore unable to respond fully to this Interrogatory.  Proxy Ltd. has been paid approximately $3.45 million USD in Ireland by BSC for this bulk polypropylene mesh manufactured for and sold to BSC from the date in 2007 that Proxy Ltd. began manufacturing it through November 30, 2012.

Interrogatory No. 11:  Please state the number of units of the Pinnacle device sold since its clearance by the FDA through the date of your response to this Interrogatory in each of the following States, respectively:  Georgia;  West Virginia;  Alabama;  Tennessee;  Arkansas; Pennsylvania; California; and Michigan.

Answer:  Proxy Ltd. restates its general objections herein as if by reference.  Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine.  Proxy Ltd. objects to the extent this Interrogatory improperly seeks confidential and proprietary information.  Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, is not reasonably limited in time and scope, and is misleading insofar as it improperly assumes Proxy Ltd. sells the Pinnacle device.  Further, Proxy Ltd. objects to the extent this Interrogatory seeks information that is within the possession of third parties over whom Proxy Ltd. has no control.  Moreover, the information sought in Interrogatory No. 11 is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Proxy Ltd. responds that it sells this bulk polypropylene mesh as a component to BSC.  Those sales occur in Galway, Ireland.  Proxy Ltd. does not sell the Pinnacle device. Proxy Ltd. is without information as to the number of Pinnacle devices sold by BSC in Georgia, West Virginia, Alabama, Tennessee, Arkansas, Pennsylvania, California, or Michigan.

Interrogatory No. 12:  Please state the number of complaints of injury, complication or adverse events relating to the Pinnacle device reported to or otherwise known to Proxy through the date of your response to this Interrogatory that originated from the following States, respectively: Georgia; West Virginia; Alabama; Tennessee; Arkansas; Pennsylvania; California; and Michigan.

**Answer:  Proxy Ltd. restates its general objections herein as if by reference.  Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine.  Proxy Ltd. objects to the extent this Interrogatory improperly seeks confidential and proprietary information.  Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, is not reasonably limited in time and scope, and is misleading insofar as it improperly assumes Proxy Ltd. manufactures the Pinnacle device.  Further, Proxy Ltd. objects to the extent this Interrogatory seeks information that is within the possession of third parties over whom Proxy Ltd. has no control.  Moreover, the information sought in Interrogatory No. 12 is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Proxy Ltd. responds that it does not hold the 510(k) for the Pinnacle device and is not the manufacturer of the Pinnacle device. BSC does not transmit reports of adverse events concerning the Pinnacle device to Proxy Ltd. As BSC is the manufacturer and 510(k) holder for the Pinnacle device, Proxy Ltd. expects that BSC manages adverse event reports related to the Pinnacle device. Except as referenced in response to Interrogatory no. 21, Proxy Ltd. is without information as to the number of adverse events relating to the Pinnacle device received by BSC that originated in Georgia; West Virginia; Alabama; Tennessee; Arkansas; Pennsylvania; California; or Michigan.**

Interrogatory No. 13:  Please state the number of units of the Obtryx device which includes the Proxy-manufactured mesh component sold in the United States through the date of your response to this Interrogatory.

**Answer:  Proxy Ltd. restates its general objections herein as if by reference.  Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine.  Proxy Ltd. objects to the extent this Interrogatory improperly seeks confidential and proprietary information.  Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, is not**

reasonably limited in time and scope, and is misleading insofar as it improperly assumes Proxy Ltd. sells the Obtryx device.   Further, Proxy Ltd. objects to the extent this Interrogatory seeks information that is within the possession of third parties over whom Proxy Ltd. has no control.  Moreover, the information sought in Interrogatory No. 13 is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Proxy Ltd. responds that it does not manufacture or sell the Obtryx device. Proxy Ltd. does not hold the regulatory clearance for the Obtryx device.  Proxy Ltd. sells bulk non-sterile polypropylene mesh sometimes referred to as Advantage, a name trademarked by BSC, as a component to Medventure, a contract manufacturer for BSC. Those sales occur in Galway, Ireland. Medventure places orders with Proxy Ltd. in Galway, Ireland, based on information it receives from BSC.  Medventure incorporates the bulk, non-sterile polypropylene mesh as a component into the Obtryx device in Jeffersonville, Indiana, and sells the finished product back to BSC. Proxy Ltd. has sold approximately 4,600 units of bulk, non-sterile polypropylene mesh sometimes referred to as Advantage to Medventure from the date in August 2010 that Proxy Ltd. began manufacturing this bulk, non-sterile polypropylene mesh through November 30, 2012.  Proxy Ltd. is without information as to how many of those units Medventure incorporated into an Obtryx device for sale by BSC in the United States or how many Obtryx devices BSC has sold in the United States.


Interrogatory No. 14:  Please state the total dollar amount paid to or received by Proxy

from sales of the Obtryx device in the United States from the date of the first sale of the product

through the date of your response to this Interrogatory.

**Answer:  Proxy Ltd. restates its general objections herein as if by reference.  Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine.  Proxy Ltd. objects to the extent this Interrogatory improperly seeks confidential and proprietary information.  Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, not reasonably limited in time and scope, and is misleading insofar as it improperly assumes Proxy Ltd. makes or sells the Obtryx device.  Further, Proxy Ltd. objects to the extent this Interrogatory seeks information that is within the possession of third parties over whom Proxy Ltd. has no control.  Moreover, the information sought in Interrogatory No. 14 is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Proxy Ltd. responds that it does not manufacture or sell the Obtryx device.  Rather, Proxy Ltd. sells bulk non-sterile polypropylene mesh sometimes referred to as Advantage as a component to Medventure. Those sales occur in Galway, Ireland.  Accordingly, no money has been paid to or received by Proxy Ltd. from sales of the Obtryx device in the United States.  Moreover, Proxy Ltd. is not aware of the number of Obtryx devices sold in the United States or globally by BSC and is therefore unable to respond fully to this Interrogatory.  Proxy Ltd. has been paid approximately $233,000   USD by Medventure for bulk polypropylene mesh sometimes**

referred to as Advantage manufactured for and sold to Medventure in Ireland from the date in August 2010 that Proxy Ltd. began manufacturing this bulk, non-sterile polypropylene mesh through November 30, 2012.

Interrogatory No. 15:  Please state the number of units of the Obtryx device which includes the Proxy-manufactured mesh component sold through the date of your response to this Interrogatory in each of the following States, respectively: Georgia; West Virginia; Alabama; Tennessee; Arkansas; Pennsylvania; California; and Michigan.

**Answer:  Proxy Ltd. restates its general objections herein as if by reference.  Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine.  Proxy Ltd. objects to the extent this Interrogatory improperly seeks confidential and proprietary information.  Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, is not reasonably limited in time and scope, and is misleading insofar as it improperly assumes Proxy Ltd. sells the Obtryx device.  Further, Proxy Ltd. objects to the extent this Interrogatory seeks information that is within the possession of third parties over whom Proxy Ltd. has no control.  Moreover, the information sought in Interrogatory No. 15 is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections, Proxy Ltd. responds that it sells bulk polypropylene mesh sometimes referred to as Advantage as a component to Medventure. Those sales occur in Galway, Ireland. Proxy Ltd. is without information as to the number of Obtryx devices sold by BSC in Georgia, West Virginia, Alabama, Tennessee, Arkansas, Pennsylvania, California, or Michigan.**

Interrogatory No. 16:  Please state the number of complaints of injury, complication or adverse events relating to the Obtryx device which includes the Proxy-manufactured mesh component reported to or otherwise known to Proxy through the date of your response to this Interrogatory that originate from the following States, respectively: Georgia; West Virginia; Alabama; Tennessee; Arkansas; Pennsylvania; California; and Michigan.

**Answer:  Proxy Ltd. restates its general objections herein as if by reference.  Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine and attorney client privilege.  Proxy Ltd. objects to the extent this Interrogatory improperly seeks confidential and proprietary information.  Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly**

burdensome, not reasonably limited in time and scope, and is misleading insofar as it improperly assumes Proxy Ltd. manufactures the Obtryx device. Further, Proxy Ltd. objects to the extent this Interrogatory seeks information that is within the possession of third parties over whom Proxy Ltd. has no control. Moreover, the information sought in Interrogatory No. 16 is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Proxy Ltd. responds that it does not hold the regulatory clearance for the Obtryx device and is not the manufacturer of the Obtryx device. BSC does not transmit reports of adverse events concerning the Obtryx device to Proxy Ltd. As BSC is the manufacturer and holder of the regulatory clearance for the Obtryx device, Proxy Ltd. expects that BSC manages adverse event reports related to the Obtryx device. Except as referenced in response to Interrogatory no. 21, Proxy Ltd. is without information as to the number of adverse events relating to the Obtryx device received by BSC originating from Georgia; West Virginia; Alabama; Tennessee; Arkansas; Pennsylvania; California; or Michigan.

Interrogatory No. 17: Please state the number of units of MotifMESH and VitaMESH sold in the United States since their clearance by the FDA through the date of your response to this Interrogatory.

**Answer: Proxy Ltd. restates its general objections herein as if by reference. Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine. Proxy Ltd. objects to the extent this Interrogatory improperly seeks confidential and proprietary information. Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and is not reasonably limited in time and scope. Further, Proxy Ltd. objects to the extent this Interrogatory seeks information that is within the possession of third parties over whom Proxy Ltd. has no control. Moreover, the information sought in Interrogatory No. 17 is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, particularly since neither of these products is at issue in MDL 2326 and neither is indicated for transvaginal placement. Subject to and without waiving the foregoing objections, Proxy Ltd. responds that it sells MotifMESH in the United States through a distributor, Medline Industries, Inc., and utilizes an independent sales representative in Texas for discrete sales of this product to a small number of facilities. Proxy Ltd. has sold approximately 9,000 units of MotifMESH through Medline Industries, Inc., since 2005. Proxy Ltd. also sells VitaMESH through Medline Industries, Inc. Proxy Ltd. has sold approximately 8,000 units of VitaMESH through Medline Industries, Inc., in the United States since 2005.**

Interrogatory No. 18:  Please state the total dollar amount paid to or received by Proxy

from sales of MotifMESH and VitaMESH in the United States from the date of the first sale of

the product through the date of your response to this Interrogatory.

**Answer:  Proxy Ltd. restates its general objections herein as if by reference.  Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine.  Proxy Ltd. objects to the extent this Interrogatory improperly seeks confidential and proprietary information.  Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and is not reasonably limited in time and scope.  Moreover, the information sought in Interrogatory No. 18 is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Proxy Ltd. responds that it has been paid approximately $1.359 million USD for MotifMESH and VitaMESH sold in the United States since 2005.**

Interrogatory No. 19:  Please state the number of units of MotifMESH and VitaMESH

sold since their clearance by the FDA through the date of your response to this Interrogatory in

each of the following States, respectively: Georgia; West Virginia; Alabama; Tennessee;

Arkansas; Pennsylvania; California; and Michigan.

**Answer:  Proxy Ltd. restates its general objections herein as if by reference.  Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine.  Proxy Ltd. objects to the extent this Interrogatory improperly seeks confidential and proprietary information.  Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and is not reasonably limited in time and scope.  Further, Proxy Ltd. objects to the extent this Interrogatory seeks information that is within the possession of third parties over whom Proxy Ltd. has no control.  Moreover, the information sought in Interrogatory No. 19 is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Proxy Ltd. responds that it sells MotifMESH in the U.S. through a distributor, Medline Industries, Inc., and utilizes an independent sales representative in Texas for discrete sales of this product to a small number of facilities. Proxy Ltd. has sold approximately 9,000 units of MotifMESH in the United States since 2005. Proxy Ltd. is without information as to the number of units of MotifMESH sold by Medline Industries, if any, in Georgia, West Virginia, Alabama, Tennessee, Arkansas, Pennsylvania, California, or Michigan.  Proxy Ltd. is likewise without information as to the number of units of VitaMESH sold by Medline Industries, Inc., if any, in Georgia, West Virginia, Alabama, Tennessee, Arkansas, Pennsylvania, California, or Michigan.**

14

Interrogatory No. 20:  Please state the number of complaints of injury, complication or adverse events relating to MotifMESH and VitaMESH reported to or otherwise known to Proxy through the date of your response to this Interrogatory that originate from the following States, respectively: Georgia; West Virginia; Alabama; Tennessee; Arkansas; Pennsylvania; California; and Michigan.

**Answer:  Proxy Ltd. restates its general objections herein as if by reference.  Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine.  Proxy Ltd. objects to the extent this Interrogatory improperly seeks confidential and proprietary information.  Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and is not reasonably limited in time and scope.  Further, Proxy Ltd. objects to the extent this Interrogatory seeks information that is within the possession of third parties over whom Proxy Ltd. has no control.  Moreover, the information sought in Interrogatory No. 20 is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, based on the information presently available to it, Proxy Ltd. responds that persons have reported adverse events related to MotifMESH from the specified states in the following numbers since 2005:**

| GA | WV | AL | TN | AR | PA | CA | MI |
|----|----|----|----|----|----|----|----|
| 0  | 1  | 0  | 0  | 0  | 0  | 0  | 1  |

**Proxy Ltd. has received no adverse event reports related to VitaMESH in the United States since 2006.**

Interrogatory No. 21:  Please state the number of civil actions filed in the United States claiming injury or damages resulting from Polyform mesh, Uphold, Pinnacle, and/or the Obtryx which includes the Proxy-manufactured mesh component through the dates of your response to this Interrogatory involving a plaintiff from or an implantation in the following States, respectively: Georgia; West Virginia; Alabama; Tennessee; Arkansas; Pennsylvania; California; and Michigan.

15

**Answer:**  Proxy Ltd. restates its general objections herein as if by reference.  Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine and attorney-client privilege.  Proxy Ltd. objects to the extent this Interrogatory improperly seeks confidential and proprietary information.  Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, is not reasonably limited in time and scope, and is misleading insofar as it improperly assumes Proxy Ltd. made or sold the Uphold, Pinnacle, and the Obtryx devices.  Further, Proxy Ltd. objects to the extent this Interrogatory seeks information that plaintiffs have more control over and it is publicly available to plaintiffs.  Moreover, the information sought in Interrogatory No. 21 is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Proxy Ltd. responds that it has been terminated from approximately 14 cases for lack of product identification where the plaintiffs were from Georgia; West Virginia; Alabama; Tennessee; Arkansas; Pennsylvania; California; or Michigan.  Service of process has been attempted on Proxy Ltd. in five additional cases with plaintiffs from Georgia; West Virginia; Alabama; Tennessee; Arkansas; Pennsylvania; California; or Michigan. Those cases are:

| | | | | | |
|---|---|---|---|---|---|
| Dorothy and Terry Hagedorn v. Boston Scientific Corp., Proxy Biomedical, Inc., and Proxy Biomedical Ltd. | S.D. W. Va. MDL 2326, 2:12-cv-03449 | 07/19/2012 (improperly direct filed) | Tennessee | Pinnacle | **Proxy Ltd. purportedly was served on August 7, 2012. Proxy Ltd. moved to dismiss.** |
| Laura Ann Holizna v. Boston Scientific Corp., Proxy Biomedical, Inc., and Proxy Biomedical Ltd. | S.D. W. Va. MDL 2326, 2:12-cv-06173 | 09/06/2012 (CTO-41) | Georgia | Pinnacle and Obtryx | **Proxy Ltd. purportedly was served on November 7, 2012. Proxy Ltd. moved to dismiss.** |
| Donna Fay and Jerry W. Earnest v. Boston Scientific Corp., Proxy Biomedical, Inc., Proxy Biomedical Ltd., and American Medical Systems, Inc. | S.D. W. Va. MDL 2326, 2:12-cv-06521 | 09/20/2012 | Alabama | Pinnacle and AMS MiniArc | **Proxy Ltd. purportedly was served in January 2013. Proxy Ltd. will move to dismiss.** |
| Rhoda Ann and Douglas McVey v. Boston Scientific Corp., Proxy Biomedical, Inc., and Proxy Biomedical Ltd. | S.D.W.Va. MDL 2326 2:13-cv-1431 | 10/02/2012 | Arkansas | Pinnacle and Advantage | **Proxy Ltd. purportedly was served in January 2013. Proxy Ltd. will move to dismiss.** |
| Barker, Shirley v. Boston Scientific Corp. (d/b/a Mansfield Scientific, Inc., and Proxy Biomedical Inc. | Mass. Super. 12-3979 | 10/04/12 | AL | Pinnacle and Solyx | **Proxy Ltd. purportedly was served on November 2, 2012.** |

16

Interrogatory No. 22:  As for each civil action filed in the United States claiming injury or damages resulting from Polyform mesh, Uphold, Pinnacle, and/or the Obtryx which includes the Proxy-manufactured mesh component, please state the following: Case caption; Court where filed; Date of filing; State of implant or plaintiff's residence; identification of Proxy product involved; whether Proxy is named as a defendant in said action; and, whether Proxy is indemnifying BSC in such action.

**Answer:   See Proxy Ltd.'s objection and response to Interrogatory No. 21. This request is also unduly burdensome and harassing. Subject to the foregoing objections, Proxy Ltd. further responds that it is not indemnifying BSC in any civil action claiming injury or damages resulting from Polyform Mesh or any component manufactured by Proxy Ltd.**

Interrogatory No. 23:  Please list every meeting, convention or conference in the United States of any professional society, medical or scientific organization, or industry or trade organization where Proxy was an exhibitor or presenter, had a booth or similar exhibition, or otherwise disseminated information about Proxy products. For each such meeting, please state the date and location of such meeting, and the names of all attendees from Proxy.

**Answer:   Proxy Ltd. restates its general objections herein as if by reference.  Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine.   Proxy Ltd. objects to the extent this Interrogatory improperly seeks confidential and proprietary information.  Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and is not reasonably limited in time and scope.  Further, the information sought in Interrogatory No. 23 is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Proxy Ltd. states that it is not a member of any professional society, medical or scientific organization, or industry or trade organization in the United States. Proxy Ltd.  has attended, through its Managing Director and other individuals, various tradeshows or conferences for purposes of monitoring the market for biomaterial implants, minimally invasive instruments, tissue engineering materials, and pharmacology. Proxy Ltd. has disseminated limited information about MotifMESH and VitaMESH at those conferences.   Prior to 2006, through its**

Managing Director, Proxy Ltd. attended meetings of the American Urology Association and the American Urogynecological Society  for purposes of monitoring the market for womens' health.  Proxy Ltd. has not exhibited, presented, or otherwise disseminated information about Polyform Mesh or polypropylene mesh at any such conference. Peter Gingras is Proxy Ltd.'s Managing Director.  In addition, Proxy Ltd. has attended the additional following conferences or trade shows:

| Trade Organization | Date | Location | Entity Attending | Individual(s) Attending |
|---|---|---|---|---|
| American Academy of Orthopaedic Surgeons | February 22-26, 2009 | Las Vegas, NV | Proxy Ltd. | Peter Gingras, Niall Rooney |
| American Academy of Orthopaedic Surgeons | March 7-11, 2010 | New Orleans, LA | Proxy Ltd. | Peter Gingras, Thomas Neenan, and Niall Rooney |
| American Academy of Orthopaedic Surgeons | February 8-11, 2012 | San Diego, CA | Proxy Ltd. | Niall Rooney |
| American College of Surgeons | October 16-20, 2005 | San Francisco, CA | Proxy Ltd. | Peter Gingras |
| American College of Surgeons | October 8-11, 2007 | New Orleans, LA | Proxy Ltd. | Michael McCartin |
| American College of Surgeons | October 13-14, 2008 | San Francisco, CA | Proxy Ltd. | Peter Gingras |
| SAGES | April 8-11, 2008 | Philadelphia, PA | Proxy Ltd. | Peter Gingras, Peter Mulrooney |

| Society for Biomaterials Annual Meeting and Exposition | April 18-20, 2007 | Chicago, IL, | Proxy Ltd. | Peter Gingras |
| Society for Biomaterials Meeting on Translational Research | September 11-13, 2008 | Atlanta, GA | Proxy Ltd. | Peter Gingras |
| Global Healthcare Innovation Conference | April 29-30, 2008 | Cleveland, OH | Proxy Ltd. | Peter Gingras |
| American Hernia Society | March 7-9, 2007 | Hollywood, FL | Proxy Ltd. | Peter Gingras, Gabriela Voskerician |

In addition, further to Proxy Ltd.'s latest meet and confer efforts with counsel for plaintiffs, Proxy Ltd. identifies the following conferences or trade shows that Proxy Inc. attended:

| **Trade Organization** | **Date** | **Location** | **Entity Attending** | **Individual(s) Attending** |
| --- | --- | --- | --- | --- |
| Society for Biomaterials | April 21-24, 2010 | Seattle, WA | Proxy Inc. | Peter Gingras, Thomas Neenan |
| AdvaMed MedTech Conference | September 26-28, 2011 | Washington D.C. | Proxy Inc. | Peter Gingras |
| Abdominal Wall Reconstruction | June 17-19, 2010 | Washington, D.C. | Proxy Inc. | Peter Gingras and John Rischmiller |
| American Academy of Orthopaedic Surgeons | February 22-26, 2009 | Las Vegas, NV | Proxy Inc. | Peter Gingras |
| American Academy of Orthopaedic Surgeons | March 7-11, 2010 | New Orleans, LA | Proxy Inc. | Peter Gingras, Thomas Neenan |

| | | | | |
|---|---|---|---|---|
| AdvaMed MedTech Conference | September 26-28, 2011 | Washington, D.C. | Proxy Inc. | Peter Gingras |
| AdvaMed MedTech Conference | October 18-20, 2010 | Washington, D.C. | Proxy Inc. | Peter Gingras |
| AdvaMed MedTech Conference | October 12-14, 2009 | Washington, D.C. | Proxy Inc. | Peter Gingras |
| Heal Ohio | 20-Oct-11 | Rootstown, OH | Proxy Inc. | Peter Gingras, Erinn Joyce |
| Heal Ohio | 21-Oct-10 | Rootstown, OH | Proxy Inc. | Peter Gingras |
| Heal Ohio | 22-Oct-09 | Rootstown, OH | Proxy Inc. | Peter Gingras, Gabriela Voskerician |
| MD&M Minneapolis Conference | October 13-14, 2010 | Minneapolis, MN | Proxy Inc. | Peter Gingras, Thomas Neenan |
| MD&M West Conference | February 14-16, 2012 | Anaheim, CA | Proxy Inc. | Peter Gingras, Thomas Neenan |
| MD&M West Conference | February 8-10, 2011 | Anaheim, CA | Proxy Inc. | Bruce Dunaway, Peter Gingras, Thomas Neenan |
| Orthopaedic Research Society | January 13-16, 2011 | Long Beach, CA | Proxy Inc. | Thomas Neenan |

| | | | | |
|---|---|---|---|---|
| Society for Biomaterials Annual Meeting and Exposition | April 13-16, 2011 | Orlando, FL | Proxy Inc. | Peter Gingras and Thomas Neenan |
| Society for Biomaterials Annual Meeting and Exposition | April 21-23, 2010 | Seattle, WA | Proxy Inc. | Peter Gingras and Thomas Neenan |
| Society for Biomaterials Meeting | April 22 - 25, 2009 | San Antonio, TX | Proxy Inc. | Peter Gingras |
| World Stem Cell Summit | October 4-6, 2010 | Detroit, MI | Proxy Inc. | Peter Gingras, Thomas Neenan |
| MD&M Minneapolis Conference | October 31- November 1, 2012 | Minneapolis, MN | Proxy Inc. | Peter Gingras, Thom Murphy, Doug Varian |
| MD&M Minneapolis Conference | November 2-3, 2011 | Minneapolis, MN | Proxy Inc. | Peter Gingras, Thomas Neenan |
| Society for Biomaterials | October 4-5, 2012 | New Orleans, LA | Proxy Inc. | Doug Varian |
| Abdominal Wall Reconstruction | 14-Jun-12 | Washington, D.C. | Proxy Inc. | Peter Gingras |
| MD&M East Conference | June 7-9, 2011 | New York, NY | Proxy Inc. | Peter Gingras, Thomas Neenan |
| MD&M East Conference | May 12-14, 2012 | Philadelphia, PA | Proxy Inc. | Peter Gingras, Thomas Neenan |

| MSC 2011 | August 22-24, 2011 | Cleveland, OH | Proxy Inc. | Peter Gingras |
| TERMIS NA | December 6-8, 2010 | Orlando, FL | Proxy Inc. | Thomas Neenan |
| Micro Manufacturing | May 11-13, 2010 | Cincinnati, OH | Proxy Inc. | Peter Gingras, Thomas Neenan |
| BioOhio Supplier Conference | 16-Mar-10 | Columbus, OH | Proxy Inc. | Peter Gingras |
| American Hernia Society | May 17-20, 2010 | Orlando, FL | Proxy Inc. | Peter Gingras, John Rischmiller |
| Cleveland Clinic | October 3-5, 2011 | Cleveland, OH | Proxy Inc. | Peter Gingras |
| American Hernia Society | March 28-31, 2012 | New York, NY | Proxy Inc. | Peter Gingras |

Interrogatory No. 24:   Please identify every United States-based trade, industry, scientific, medical or professional organization of which Proxy is or has been a member (e.g., AdvaMed, Society for Biomaterials, American Institute of Medical and Biological Engineering). As for each such organization, please state when Proxy became a member.

**Answer:   Proxy Ltd. restates its general objections herein as if by reference.  Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine.   Proxy Ltd. objects to the extent this Interrogatory improperly seeks confidential and proprietary information.  Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and is not reasonably limited in time and scope.   Further, Proxy Ltd. objects to the extent this Interrogatory seeks information that is within the possession of third parties over whom Proxy Ltd. has no control.  Moreover, the information sought in Interrogatory No. 24 is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Proxy Ltd. states that it is not and has not been a member of any United States-based trade, industry, scientific, medical or professional organization.  Proxy Ltd. acknowledges that it is listed on AdvaMed's website as a member of that organization.  That listing is incorrect.  Proxy Biomedical, Inc., not Proxy Biomedical, Ltd., is a member of that organization.**

Interrogatory No. 25:  Please list every United States materials supplier from whom Proxy has purchased any material used in the manufacture of any Proxy product sold in the United States, and for each such supplier, please state the materials purchased, the quantity of

materials purchased, the amount paid for such materials, and the Proxy products in which said

materials were used.

**Answer:  Proxy Ltd. restates its general objections herein as if by reference.  Proxy Ltd. objects to this Interrogatory on the basis that the requested information is protected by the work product doctrine.   Proxy Ltd. objects to the extent this Interrogatory improperly seeks confidential and proprietary information.  Proxy Ltd. further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and is not reasonably limited in time and scope.   Further, Proxy Ltd. objects to the extent this Interrogatory seeks information that is within the possession of third parties over whom Proxy Ltd. has no control.  Moreover, the information sought in Interrogatory No. 25 is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Proxy Ltd. states that it has not sold Polyform Mesh, bulk polypropylene mesh specified by BSC or Medventure, Uphold, Pinnacle, or Obtryx devices in the United States. Proxy Ltd. sells Polyform Mesh to BSC. Those sales occur in Galway, Ireland.  Proxy Ltd. sells bulk non-sterile polypropylene mesh to Medventure and BSC as components for incorporation by Medventure and BSC into BSC's devices.   Proxy Ltd. has purchased non-sterile mesh in bulk for manufacture of polypropylene mesh for BSC from Secant Medical in Perkasie, Pennsylvania. As specified by BSC, the polypropylene resin in these meshes is supplied by BSC from its inventory to Proxy Ltd. in Galway, Ireland, where it is converted into fiber through the extrusion process and knitted into the mesh.**

As to objections,

/s/ Paul J. Cosgrove
Paul J. Cosgrove
Jennifer Hageman
Hannah W. M. Schrock
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
Telephone: (513) 698-5034
Facsimile: (513) 698-5035
pcosgrove@ulmer.com
jhageman@ulmer.com
hschrock@ulmer.com

**_Attorneys for Specially Appearing Defendant
Proxy Biomedical, Ltd._**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 7, 2013, the foregoing *Specially Appearing Defendant Proxy Biomedical, Ltd.'s Second Supplemental Answers to Plaintiffs' First Set of Interrogatories* were served on the following by Electronic Mail.


<u>/s/ Hannah Schrock</u>

CIN2000 941359v1
32661.00029

## DECLARATION OF PETER MULROONEY

I, Peter Mulrooney, having been duly sworn and cautioned, deposes and states that I have read the foregoing Second Supplemental Answers to Plaintiff's First Set of Interrogatories to specially-appearing defendant Proxy Biomedical, Ltd., and that the same are true and correct to the best of my knowledge and belief.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on: February 7, 2013

Peter Mulrooney, CEO
Specially-appearing defendant Proxy Biomedical, Ltd.
Coilleach,
Spiddal,
Co. Galway,
Ireland