## ESCROW AGREEMENT

This Escrow Agreement (the "Escrow Agreement") is entered into and shall be effective as of February, 26, 2016, by and among Boston Scientific Corporation ("BSC"); the law firm of Law Offices of Charles H. Johnson, P.A. ("Charles Johnson Law Firm"), acting on behalf of certain claimants represented by Charles Johnson Firm and/or counsel associating with Charles Johnson Law Firm for purposes of participating in the confidential settlement agreement described herein (the "Associated Counsel") (together with Charles Johnson Law Firm, "Claimants' Counsel") who all have had implanted one or more BSC Pelvic Repair Products, or are asserting a claim on behalf of a claimant who is not capable of asserting her own claim (collectively, "Claimants," and each a "Claimant"); and U.S. Bank, National Association, solely in its capacity as escrow agent (the "Escrow Agent") (collectively, the "Parties").

## RECITALS

WHEREAS, BSC and Charles Johnson Law Firm have reached a confidential settlement agreement to fully, finally, and forever resolve, discharge, and settle all cases and/or claims asserted by the Claimants (the "Settlement Agreement");

WHEREAS, this Escrow Agreement sets forth the terms and conditions whereby the funds that BSC deposits, or causes to be deposited, into the escrow account (the "Settlement Escrow") established pursuant to this Escrow Agreement will be retained, invested, and distributed therefrom to effectuate the terms of the Settlement Agreement;

WHEREAS, the Settlement Agreement contemplates that the Settlement Escrow shall be, and shall be operated as, a "qualified settlement fund" within the meaning of Section 1.468B-1, *et seq.*, of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code (the "Treasury Regulations");

WHEREAS, unless specifically defined herein, all defined terms shall have the same meaning as set forth in the Settlement Agreement;

WHEREAS, the Settlement Escrow has been approved by, and is subject to the continuing jurisdiction of, the United States District Court for the Southern District of West Virginia (Charleston Division) (the "Court"); and

NOW, THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Parties agree as follows:

# AGREEMENT

I. <u>PURPOSE OF THE ESCROW AGREEMENT</u>

The purpose of this Escrow Agreement shall be to facilitate the performance of the deposit and payment obligations and related obligations set forth in the Settlement Agreement.

II. <u>APPOINTMENT OF ESCROW AGENT</u>

U.S. Bank is hereby appointed to act as Escrow Agent in accordance with the terms hereof, and U.S. Bank hereby accepts such appointment. The Escrow Agent shall have all the rights, powers, protections, duties, and obligations expressly provided herein.

III. <u>FUNDS WITHIN SETTLEMENT ESCROW ACCOUNT</u>

The Settlement Escrow shall initially be comprised of three subaccounts (the "Accounts"), to be used solely for such purposes as are set forth in Section I above: (1) the Settlement Escrow Account, (2) Lien Holdback Account, and (3) the Administration Account. With approval of BSC and Charles Johnson Law Firm, the Escrow Agent may establish one or more additional Accounts for purposes of this Escrow Agreement.

IV. <u>DEPOSITS INTO SETTLEMENT ESCROW ACCOUNT</u>

    A. <u>Deposit of Assets.</u> BSC shall deposit, or cause to be deposited, into the Settlement Escrow such settlement consideration, and at such time, as provided in the Settlement Agreement, and further provided that all deposits shall be made in immediately available funds. The amounts that BSC deposits, or causes to be deposited, into the Settlement Escrow pursuant to this Section IV shall be held in the Settlement Escrow Account until such time as the Escrow Agent receives instructions pursuant to Section V to distribute such amounts from the Settlement Escrow, or to transfer amounts to another Account within the Settlement Escrow. The amount of all deposits into the Settlement Escrow, and the interest, net realized gains, and other earnings accrued on such deposits, are collectively referred to herein (regardless of in which Accounts such amounts are held) as the "Escrowed Funds".

    B. <u>Acceptance of Assets.</u> To further the purposes of this Escrow Agreement, the Escrow Agent agrees to accept the settlement contributions that BSC deposits, or causes to be deposited, into the Settlement Escrow, and any earnings thereon, and the Escrow Agent assumes all liability and responsibility for the administration and distribution of the Escrowed Funds, in accordance with and subject to the terms of this Escrow Agreement.

V. DISTRIBUTION OF ESCROWED FUNDS; TRANSFERS BETWEEN ACCOUNTS

    A. <u>Distribution of Escrowed Funds.</u> The Parties acknowledge that the Escrowed Funds are to be distributed solely in the manner, at the times, as set forth in this Escrow Agreement.

        1. Within ten (10) days of receipt of a written notification which has been approved pursuant to signature by an authorized person (an "Authorized Person") for BSC, the Escrow Agent shall, subject to the availability of funds deposited pursuant to Section IV:

            a. distribute from the Settlement Escrow Account (1) the amount specified, if any, to the MDL 2326 Fund; and (2) the amount specified to Claimants' Counsel, as agent of the Claimants (except where such amounts are subject to structured settlements in accordance with Section VI or are to be distributed to a Claimants' Counsel Account in accordance with Section VI); and

            b. transfer the amount specified, if any from the Settlement Escrow Account to the Lien Holdback Account.

        2. Within five (5) days of receipt of a written notification hereto which has been approved pursuant to signature of an Authorized Person for BSC, the Escrow Agent shall, subject to the availability of funds deposited pursuant to Section IV, distribute the specified amounts from the Lien Holdback Account to the lien holder(s) (if any) and/or to Claimants' Counsel, as agent of the Claimants (except where such amounts are subject to structured settlements in accordance with Section VI or are to be distributed to a Claimants' Counsel Account in accordance with Section VI).

        3. The Escrow Agent shall, subject to the availability of funds as described in this Section V.A.3, distribute from the Administration Account, such amounts as follows:

            a. The distributions to pay the Special Master for her fees, costs, and expenses related to the calculation, allocation, division, and distribution of the Settlement Amount in accordance with the Settlement Agreement shall be made by the Escrow Agent, subject to approval by Charles Johnson Law Firm.

            b. The distributions to pay the Escrow Agent for its fees, costs, and expenses, including professional fees, costs and expenses and extraordinary costs shall be made by the Escrow Agent, subject to approval by Charles Johnson Law Firm.

3

  c. The distributions to pay costs associated with tax preparation, payment, reporting and withholding by the Escrow Agent as described in Section VIII, shall be made by the Escrow Agent, subject to approval by Charles Johnson Law Firm.

  Provided, however, that if the available funds in the Administration Account are insufficient to pay for the above-described costs in this Section V.A.3, such remaining costs shall, unless otherwise agreed in writing between Charles Johnson Law Firm and BSC, be paid from the Settlement Amount in accordance with the Settlement Agreement.

 4. All interest or investment income earned on the Settlement Escrow Account or the Lien Holdback Account pursuant to Section VII shall be transferred to the Administration Account on a monthly basis.

B. <u>Reversionary Interest</u>. BSC shall have a reversionary interest in the Settlement Escrow Account and Administration Account (and any other accounts that may be created pursuant to the Settlement Escrow Agreement except the Lien Holdback Fund) for any amounts which remain in such Accounts after all distributions have been paid.

C. <u>Authorized Persons</u>. The names of the Authorized Persons, together with their specimen signatures, shall be provided by BSC to the Escrow Agent, and may be amended from time to time.

VI. <u>DISTRIBUTIONS FOR STRUCTURED SETTLEMENTS OR TO CLAIMANTS' COUNSEL ACCOUNTS</u>

 A. <u>Structured Settlements.</u> The Escrow Agent shall, at the election of a Claimant or Claimants' Counsel (for the purposes of this Section VI, a "Structured Settlement Electing Party") distribute specified amounts which would otherwise be distributed to Claimants' Counsel, as agent of the Claimants, pursuant to Section V, in the form of a Structured Settlement,[1] provided that the following requirements are satisfied:

  1. The Escrow Agent shall not distribute any such amounts with respect to such Structured Settlement until such time as the Escrow Agent has assigned all obligations to make Periodic Payments to the Assignee through the Escrow Agent's execution of a structured settlement

---

[1] A Structured Settlement means that the Escrow Agent, on behalf of the Settlement Escrow, agrees to pay amounts otherwise payable from the Escrow Account in a lump sum in the form of periodic payments over time ("Periodic Payments"), conditioned upon the Escrow Agent's assignment of such Periodic Payment obligation to a third-party assignee (the "Assignee"), which then funds the obligation to make Periodic Payments through the purchase of a funding asset from a related issuer or custodian of such funding asset.

4

      assignment and release form which (a) has already been properly executed by all other required parties to the Structured Settlement, (b) contains no language inconsistent with this Escrow Agreement, Settlement Agreement or the Release and (c) satisfies any additional requirements agreed to by BSC, Charles Johnson Law Firm and Escrow Agent;

    2. The Assignee shall be the sole party to whom the Escrow Agent or the Escrow Account owes the obligation to pay the amount being used to fund the Structured Settlement for all purposes, including, as applicable, section 130(c) of the Code or Treasury Regulation section 1.461-6, and upon assignment and payment of the amount used to fund the Structured Settlement by the Escrow Agent to the Assignee, the Structured Settlement Electing Party irrevocably gives up any right, under any circumstances, to seek from the Escrow Agent, the Escrow Account or the Released Parties (as such term is defined in the Settlement Agreement) (a) any further payments with regard to the Structured Settlement, including in any circumstances where, for any reason, the applicable party fails to receive all the future Periodic Payments at any time, (b) any further payments with respect to any action of the Escrow Agent, the Escrow Account or the Released Parties, related to the Structured Settlement, as well as (c) any further payments regarding any tax, financial or other consequences of the Structured Settlement.

  B. <u>Distributions to Claimants' Counsel Account</u>. The Escrow Agent shall, at the election of a Claimants' Counsel, and upon approval of Charles Johnson Law Firm, distribute specified amounts which would otherwise be distributed to such Claimants' Counsel, as agent of the Claimants pursuant to Section V, to a Claimants' Counsel Account separate from this Settlement Escrow which (1) is structured and operated in a manner so that it qualifies as a "qualified settlement fund" under Treasury Regulation section 1.468B-l, and (2) has been created pursuant to an escrow agreement which contains no terms inconsistent with the Settlement Agreement, and has been approved by the Court, BSC, Charles Johnson Law Firm and the Escrow Agent for such Claimants' Counsel Account.

VII.   <u>INVESTMENT OF ESCROWED FUNDS</u>

  A. <u>Investment; Preservation of Principal.</u> The Escrow Agent shall invest and reinvest from time to time the Escrowed Funds in: (i) any obligations of, or any obligation guaranteed as to principal and interest by, the United States of America or any agency or instrumentality thereof; or (ii) U.S. dollar denominated deposit accounts with domestic commercial or national banks, including the Escrow Agent or an affiliate of the Escrow Agent, that have a short term issuer rating on the date of purchase of "A-1" or better by S&P or "Prime-1" or better by Moody's and maturing no more than 360 days after the date of purchase (provided that ratings on holding companies are not considered as the rating of the bank); or (iii) money market accounts or money market funds registered under the Federal Investment Company Act of 1940, whose

5

shares are registered under the Securities Act, and rated "AAAm" or "AAAm-G" or better by S&P, and "Aaa,""Aa1" or "Aa2" if rated by Moody's, including any mutual fund for which the Escrow Agent or an Affiliate of the Escrow Agent serves as investment manager, administrator, shareholder servicing agent, and/or custodian, as directed in writing by Charles Johnson Law Firm in a form to be agreed to by Charles Johnson Law Firm and the Escrow Agent. Any investment losses realized by investment of Escrowed Funds or any portion thereof shall be charged to the Escrowed Funds. To the extent the Escrow Agent invests any funds in the manner provided for in this Section VII, no Party hereto (including the Escrow Agent) shall be liable for any loss(es) which may be incurred by reason of any such investment (or reinvestment). Such funds should be invested such that the following investment policy is implemented, as appropriate: (i) safety of principal; (ii) zero bank balance exposure through use of custodial/trust accounts (to avoid the risk of bank deposit forfeiture); and (iii) zero sweep disbursement accounts.

B. <u>Use of Interest or Investment Income.</u> All interest on or income realized by investment of the Escrowed Funds or any portion hereof shall be accumulated and added to the Escrowed Funds, and further provided that any such interest or investment income earned on the Settlement Escrow Account or the Lien Holdback Account pursuant to Section VII shall be transferred to the Administration Account on a monthly basis.

VIII. <u>TAX MATTERS</u>

A. <u>Settlement Escrow as a Qualified Settlement Fund.</u> The Settlement Escrow is structured and shall be operated in a manner so that it qualifies as a "qualified settlement fund" under section 468B of the Internal Revenue Code of 1986, as amended (the "Code") and Treasury Regulation sections 1.468B-1, *et seq.* Specifically, (1) the establishment of the Settlement Escrow under the terms and conditions of this Escrow Agreement is subject to Court approval, and no deposits into or distributions from the Settlement Escrow shall be made until such Court approval is obtained; (2) the Settlement Escrow is subject to the continuing jurisdiction and supervision of the Court; (3) the Settlement Escrow is established to resolve or satisfy claims of alleged tort or violation of law arising out of implantation of one or more BSC Pelvic Repair System Products; and (4) the Settlement Escrow is an escrow account, and its assets are, and will be, segregated from the general assets of BSC and deposited herein. The Settlement Escrow is composed of the Accounts, which together constitute a single qualified settlement fund. Consistent with the terms of the Settlement Agreement and this Escrow Agreement, the Escrow Agent shall take any action or cause the Settlement Escrow to take any action necessary to create and maintain its status as a qualified settlement fund, and the Escrow Agent agrees not to take any action that will adversely affect the qualification of the Settlement Escrow as a qualified settlement fund. The Escrow Agent shall serve as the "administrator" within the meaning of Regulation Section 1.468B-2(k)(3).

B. <u>Tax Preparation, Payment, Reporting, and Withholding Requirements.</u> In its role as "administrator" of the Settlement Escrow within the meaning of Treasury Regulation section 1.468B-2(k)(3), the Escrow Agent shall be responsible for the timely and proper performance of the undertakings specified in the regulations promulgated under section 468B of the Code, including, but not limited to, the obtaining of an employer identification number for the Escrow Account; the filing of all required federal, state or local tax and information returns in accordance with the provisions of Treasury Regulation section 1.468B-2(k) and Treasury Regulation section 1.468B-2(l); any required withholding of tax; the payment of any federal, state or local taxes (including estimated taxes) and associated tax related penalties and interest for which the Escrow Account may be liable, with such amounts payable from the Administration Account subject to Section V.A.3; responding to any questions from or audits regarding such taxes by the Internal Revenue Service or any state or local tax authority; at BSC'S request, filing a "relation back election" as described in Treasury Regulation section 1.468B-1 (j) and taking all appropriate actions as may be necessary to this end, including executing a "relation back election" statement that BSC chooses to file with respect to the Escrow Funds; and compliance with any other tax-related requirements. The Escrow Agent may retain and compensate independent, certified public accountants to consult with and advise the Escrow Agent with respect to the preparation of any and all appropriate income tax returns, information returns or compliance withholding requirements, with such amounts payable from the Administration Account subject to Section V.A.3. In no event shall BSC have any liability or responsibility for any amounts payable by the Escrow Account or Escrow Agent pursuant to this Section VIII, and BSC shall be indemnified and held harmless for such amounts by the Escrow Account.

C. <u>Savings Provision; Failure to Qualify as a Qualified Settlement Fund</u>

    1.    Notwithstanding anything herein to the contrary, in the event that any portion of this Escrow Agreement shall at any time be considered cause for the Escrow Account to fail to qualify as a qualified settlement fund under section 468B of the Code, together with any and all Treasury Regulations and Internal Revenue Service Notices, Announcements and directives thereunder, such offending portion of this Escrow Agreement shall be considered null, void, and of no effect, without any action by any court or by the Administrator, so that this Escrow Account continues to qualify as a qualified settlement fund in compliance with section 468B of the Code and the applicable administrative authority and announcements thereunder. In the event that this Section VIII.C applies to render an offending Section null, void, or of no effect, the remainder of this Escrow Agreement shall not be affected thereby, and each remaining term and Section of the Agreement shall be valid and enforced to the fullest extent permitted by law.

    2.    Notwithstanding any effort, or failure, of the Escrow Agent and the other Parties to treat the Escrow Account as a "qualified settlement fund" within

7

the meaning of section 1.468B-1 of the Treasury Regulations effective as of the date hereof, any additional tax liability, interest or penalties incurred by BSC resulting from income earned by the Escrow Account shall be reimbursed from the Escrow Account in the amount of such additional tax liability, interest or penalties upon BSC's written request to the Escrow Agent.

IX. ADDITIONAL MATTERS RELATING TO DUTIES, LIABILITIES, AND RIGHTS OF ESCROW AGENT

   A. Compensation. The Escrow Agent will be paid pursuant to the schedule of fees approved pursuant to Section V.A.3 and promptly reimbursed such fees, costs, and expenses, including reasonable attorneys' fees and expenses suffered or incurred by Escrow Agent connection with the performance of its duties and obligations hereunder, including without limitation, accountancy and tax return preparation fees incurred in connection with the performance of the duties set forth in Section VIII hereof and all actions necessary or advisable with respect thereto (including, without limitation, the payment of any professional fees and expenses related thereto). All such fees and expenses shall be paid from the Administration Account in accordance with Section V.A.3.

   B. Preparation of Financial Statements and Audited Financial Records. The Escrow Agent shall, upon request from Claimants' Counsel, within ten days of any such request, provide financial statements for the Settlement Escrow, including receipts, disbursements and earnings. In addition, beginning twelve (12) months from the creation of this Escrow Account, and each year thereafter, the Escrow Agent shall cause an audit to be performed by a Certified Public Accountant, acceptable to the parties, upon the financial records of the Settlement Escrow, which shall reflect amounts received from BSC in the prior twelve (12) months and disbursement made in the prior twelve (12) months. Complete copies of such audited financial records shall be provided to BSC and Charles Johnson Law Firm.

   C. No Implied Duties. This Escrow Agreement expressly and exclusively sets forth the duties of the Escrow Agent with respect to any and all matters pertinent hereto and no implied duties, responsibilities, or obligations (including, without limitation, any fiduciary or similar obligations) shall be read into this Escrow Agreement against the Escrow Agent.

   D. Indemnification. The Escrow Agent and its officers, directors, employees and agents (collectively, "Indemnified Parties") shall be indemnified by the Escrowed Funds, and held harmless against, any and all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act or alleged omission by the Indemnified Parties or any other cause, in any case in connection with the acceptance of, or performance or nonperformance by the Indemnified Parties

of, any of the Indemnified Parties' duties under this Escrow Agreement, except as a result of the Indemnified Parties' bad faith, willful misconduct or gross negligence. Provided, however, that this provision does not give the Indemnified Parties any rights against BSC, which shall have no obligation or responsibility with respect to the Indemnified Parties.

E. <u>Notices.</u> The Escrow Agent shall not be responsible for nor shall it be its duty to notify any party hereto or any other party interested in this Escrow Agreement of any payment required or maturity occurring under this Escrow Agreement or under the terms of any instrument deposited therewith unless such notice is explicitly provided for in this Escrow Agreement.

F. <u>Liquidation of Investments.</u> The Escrow Agent shall have the right to liquidate any investment held in order to provide funds necessary to make required payments under this Escrow Agreement. The Escrow Agent shall have no liability as a result of any liquidation of any investment prior to its maturity when that liquidation is necessary (to be determined in the Escrow Agent's sole discretion) to provide funds to make required payments under this Escrow Agreement, except to the extent that such investment has been made in violation of Section VII.

G. <u>Validity of Instructions.</u> Escrow Agent shall not be liable for the sufficiency, correctness, or genuineness as to form, manner of execution, of validity of any instrument deposited, or instruction given, nor as to the identity, authority or rights of any person executing the same, except as above provided. Except as limited pursuant to Section IX.D, the Escrow Agent shall be protected in conclusively relying and acting upon any document which the Escrow Agent in good faith believes to be genuine and what it purports to be, including, without limitation, authorizations regarding release, disbursement or retention of the Escrowed Funds pursuant to Section V.

H. <u>Conflicting Demands.</u> Should Escrow Agent during the term of this Escrow Agreement receive or become aware of any conflicting demands or claims with respect to the Escrowed Funds or any part thereof, or the rights or obligations of any of the Parties hereto, or any money deposited herein or affected hereby, or in the event that the Escrow Agent, in good faith, is in doubt as to what action it should take hereunder, the Escrow Agent shall have the right to discontinue all further acts on its part until such conflict is resolved by BSC and Charles Johnson Law Firm to its satisfaction. Except as limited pursuant to Section IX.D, the Escrow Agent shall not be or become liable in any way or to any party for its failure or refusal to act, and the Escrow Agent shall be entitled to continue to refrain from acting until all differences shall have been resolved and all doubt eliminated by agreement among all of the interested parties, and the Escrow Agent or Disbursing Agent shall have been notified thereof in writing signed by all such parties.

I. <u>Garnishment or Levy of Escrowed Funds.</u> In the event that any of the Escrowed Funds shall be attached, garnished or levied upon by any court order, or the delivery

9

thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the Escrowed Funds, the Escrow Agent shall promptly notify BSC and Charles Johnson Law Firm in writing about such act, and wait for direction from BSC and Charles Johnson Law Firm.

J. Release of Escrow Agent. The retention and distribution of the Escrowed Funds in accordance with the terms and provisions of this Escrow Agreement shall fully and completely release Escrow Agent from any and all further obligations or liabilities under this Escrow Agreement, except to the extent provided in Section IX.D.

K. Resignation and Removal of Escrow Agent; Appointment of Successor.

   1. The Escrow Agent or any successor may resign by a written notice delivered to BSC and Charles Johnson Law Firm specifying the effective date of such resignation, which date shall not be earlier than one hundred twenty (120) days following the receipt by both BSC and Charles Johnson Law Firm of the notice of resignation. Such resignation shall take effect on the date specified on the notice of resignation, unless a successor escrow agent has been appointed in accordance with the provisions of this Section IX.K and has accepted such appointment on an earlier date, in which case such resignation shall take effect immediately upon receipt by such successor escrow agent of the Escrowed Funds. The Escrow Agent may be removed by the joint action of BSC and Charles Johnson Law Firm, with or without cause at any time upon thirty (30) days' prior written notice to Escrow Agent, which notice may be waived by Escrow Agent, and the Escrow Agent's removal shall be effective upon the expiration of such thirty (30) days or upon the Escrow Agent's waiver of such notice.

   2. Appointment of Successor Escrow Agent. If at any time Escrow Agent shall resign, be removed, or otherwise become incapable of acting as escrow agent pursuant to this Escrow Agreement, or if at any time a vacancy shall occur in the office of Escrow Agent for any other cause, a successor agent meeting the requirements set forth in Section IX.L, shall be appointed by BSC and Charles Johnson Law Firm by a written instrument delivered to the successor agent. Upon the appointment and acceptance of any successor agent hereunder, Escrow Agent shall transfer the Escrowed Funds to its successor.

L. Qualifications of Escrow Agent. The Escrow Agent, including any successor Escrow Agent, shall at all times be a bank, savings and loan association, or trust company in good standing, organized and doing business under the laws of the United States of America or a State of the United States of America, having a net worth of not less than Five Hundred Million ($500,000,000), and shall be authorized under such laws to enter into and perform this Escrow Agreement. If the Escrow Agent at any time ceases to have the foregoing qualifications, Escrow Agent shall give notice of

resignation in accordance with Section IX.K and a qualified successor escrow agent or disbursing agent shall be appointed in accordance with Section IX.K.

X.  TERMINATION OF SETTLEMENT ESCROW

The Settlement Escrow will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of Section V (the "Termination"). Upon Termination of the Settlement Escrow in accordance with this Section X, Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Escrow Agreement, except as otherwise specifically provided herein.

XI.  MISCELLANEOUS

   A. Notices. Any notice of other communication hereunder must be given in writing and either: (i) delivered in person; (ii) transmitted by telefax or other telecommunications mechanism, provided that any notice to be given is also mailed as provided in clause (iii); (iii) mailed by registered, express, or certified mail, postage prepaid return receipt requested; or (iv) delivered by a generally recognized courier or messenger service that provides written acknowledgement of receipt by addressee, postage prepaid as follows:

   If to BSC, to:

   Peter Gafner, Esquire
   Vice President and Chief Litigation Officer
   Boston Scientific Corporation
   One Scimed Place
   Maple Grove, MN 55311-1566
   (763) 494-2442 (phone)
   Peter.Gafner@bsci.com

   Michael A. Tanenbaum, Esquire
   Sedgwick LLP
   1085 Raymond Blvd, 16th Floor
   Newark, NJ 07102
   (973) 820-0019 (phone)
   (973) 242-8099 (fax)
   Michael.Tanenbaum@Sedgwicklaw.com

   If to Claimants' Counsel, to:

   Charles H. Johnson, Esquire
   Law Offices of Charles H. Johnson, P.A.
   2599 Mississippi Street
   New Brighton, MN 55112
   (651) 633-5685 (phone)

    (651) 633-4442 (fax)
    bdehkes@charleshjohnsonlaw.com; jmencel@charleshjohnsonlaw.com

    If to Escrow Agent, to:

    Greger Svensson
    Assistant Vice President
    U.S. Bank, N.A.
    2299 Palmer Drive
    New Brighton, Minnesoa 55112

    or to such other address or to such other person as any Party shall have last designated by notice to the other Party. Each such notice or other communication shall be deemed received hereunder; (1) if given by telecommunication, when transmitted to the applicable number as specified in (or pursuant to) this Section; (2) if given by mail or courier service, three business days after such communication is dispatched, addressed as aforesaid; or (3) if given by any other means, when actually received at such address.

B. <u>Jurisdiction.</u> The Parties acknowledge that the Court shall retain jurisdiction over the implementation, enforcement, and performance of this Escrow Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Escrow Agreement or to the applicability of this Escrow Agreement, which suit, action, proceeding or dispute shall be governed by and interpreted according to the substantive laws of the State of West Virginia without regard to its choice of law or conflict of laws principles.

C. <u>Entire Agreement.</u> This Escrow Agreement constitutes the entire agreement and understanding of the Parties hereto in respect of the matters discussed herein. Any modification of this Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto. This Escrow Agreement shall be construed so as to be consistent with the terms of the Settlement Agreement and, in the event of any conflict between the terms of this Escrow Agreement and the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control.

D. <u>Assignment.</u> This Agreement is binding upon and will inure to the benefit of the Parties hereto and their respective successors and permitted assigns, but will not be assignable, by operation of law or otherwise, by any Party hereto without the prior written consent of the other Party.

E. <u>Sections and Other Headings.</u> Sections or other headings contained in this Escrow Agreement are for reference purposes only and will not affect in any way the meaning or interpretation of this Escrow Agreement.

F. <u>Amendments; Waivers.</u> All Parties must approve any amendment to this Escrow Agreement in writing. Any waiver of any right or remedy provided for in this Escrow Agreement requires the consent of the Party waiving such right or remedy. Every amendment or waiver of any provision of this Escrow Agreement must be made in writing and designated as an amendment or waiver, as appropriate. No failure by any party to insist on the strict performance of any provision of this Escrow Agreement or to exercise any right or remedy hereunder, will be deemed a waiver of such performance right or remedy or of any other provision of this Escrow Agreement. This Escrow Agreement shall not be modified or amended in any way that could jeopardize, impair, or modify the Escrow Account's qualified settlement fund status.

G. <u>Counterparts</u>. This Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Escrow Agreement.

H. <u>Severability.</u> If any provision of this Escrow Agreement is held to be unenforceable for any reason, it will be adjusted rather than voided, if possible, to achieve the intent of the Parties to the extent possible. In any event, all other provisions of this Escrow Agreement will be deemed valid and enforceable to the extent possible.

I. <u>Force Majeure.</u> Notwithstanding anything contained in the Escrow Agreement to the contrary, the Escrow Agent shall not incur any liability for not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control (including, without limitation, any provision of any present or future law or regulation or any act of any governmental authority, any act of God or war or terrorism, or the unavailability of the Federal Reserve Bank wire services or any electronic communication facility).

J. <u>Confidentiality.</u> All information disclosed by any Party (or its representatives), whether before or after the date hereof, in connection with the transactions contemplated by or the discussion and negotiations preceding this Escrow Agreement, to any other Party (or its representatives) will be kept confidential by such other Party and its representatives and will not be used by any such persons other than as contemplated by this Escrow Agreement, expect to the extent that such information: (a) was known by the recipient when received; (b) is or hereafter becomes lawfully obtainable from other sources; (c) is necessary or appropriate to disclose to a governmental entity having jurisdiction over the Parties, or as may otherwise be required by applicable law or by the Court; or (d) to the extent such duty as to confidentiality is waived in writing by the other Party.

**IN WITNESS WHEREOF**, each of the Parties hereto has caused this Escrow Agreement to be executed on the day and year first above written.

*[Signatures on following page; remainder of this page intentionally left blank]*

IT IS SO AGREED.

Name: _[signature]_
Printed: PETER J. GAFNER
Title: VP, CHIEF LITIGATION OFFICER

For Boston Scientific Corporation

Name: _[signature]_
Printed: Michael A. Tanenbaum
Title: Partner

Sedgwick LLP
Counsel for Boston Scientific Corporation

Name: _[signature]_
Printed: Charles Johnson
Title: Partner

Charles Johnson Law Firm
Counsel for Claimants

Name: _[signature]_
Printed: Gregor Svensson
Title: Assistant Vice President

For U.S. Bank, N.A., as Escrow Agent

14