UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | | |
|---|---|---|
| IN RE: BOSTON SCIENTIFIC | ) | MDL Docket No. 2326 |
| PRODUCTS LIABILITY LITIGATION | ) | HONORABLE JUDGE JOSEPH R. |
| | ) | GOODWIN |

**UNOPPOSED MOTION FOR APPROVAL OF QUALIFIED SETTLEMENT FUND**

Plaintiffs, clients of Simmons Hanly Conroy LLC ("SHC") which shall include all plaintiffs represented by SHC in the settlement agreement executed July 27, 2016, as well as any clients of SHC who enter into settlements with defendants in the future, by and through their counsel move this Court for an Order to: (i) establish an individual firm Qualified Settlement Fund, which shall be called the SHC BSC Qualified Settlement Fund (the "Fund"); and (ii) to appoint an administrator for this individual firm Fund. In support of this Motion, Plaintiffs respectfully state as follows:

1. Plaintiffs are seeking damages from Boston Scientific Corporation, ("BSC") arising from pelvic mesh and biologic product(s) manufactured, marketed, sold and distributed by BSC and its affiliates and suppliers under the following trade names Advantage, Advantage Fit, Arise, Capio, Capio Slim, Lynx, Meadox, Obtryx, Obtryx II, Pinnacle, Pinnacle Duet, Polyform Synthetic Mesh, Precision Anchor System, Precision Tack, Precision Twist, Prefyx, ProtoGen, Repliform, Solyx, Trelex, Uphold, Uphold lite, Upsylon, Vesica and Xenform Matrix as well as any variations of said Products, past, present or future, by ('Claimants"), or are asserting a claim on behalf of a Claimant who is not legally capable of asserting her own claim (for example, a personal representative or estate representative for a Claimant) (collectively "Claimants," and each a "Claimant") through various legal actions, which on August 6, 2012, were consolidated in this

Court by the Judicial Panel on Multidistrict Litigation by a transfer order pursuant to 28 U.S.C. § 1407.

2. Plaintiffs, by and through counsel, have conferred with counsel for Defendants and Defendants have no objection to this filing and to the relief sought herein.

3. Defendants and SHC entered into a Settlement Agreement dated as of July 27, 2016 (the "Master Settlement Agreement"), which establishes a private settlement program to resolve BSC claims – whether filed or unfiled – of U.S. claimants against BSC and through which individual SHC Plaintiffs, have agreed to settle their BSC claims.

4. At this time the exact distribution of settlement funds to the SHC Claimants cannot be finalized. Hence, in the best interest of all parties the Court should establish this Fund to receive funds from the Master Settlement Agreement satisfying these BSC Claims and allowing for the final disbursement of settlement funds to the SHC Plaintiffs.

5. For those satisfying the requirements for payment under the Master Settlement Agreement, including the provision of a release, Defendants shall pay the settlement sums into the Fund (the "Total Settlement Proceeds"). The total settlement proceeds, made payable to the SHC BSC Qualified Settlement Fund, shall be paid by Defendant and/or Defendant's insurance carrier.

6. The Fund shall be a Qualified Settlement Fund as described in Treas. Reg. Section 1.468B-1, established by order of this Court, and the Fund shall remain subject to the continuing jurisdiction of this Court.

7. This Court has jurisdiction over this matter under Treas. Reg. Section 1.468B-1(c)(1), which states in relevant part that a Qualified Settlement Fund "is established pursuant to

an order of, or is approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law) . . . and is subject to the continuing jurisdiction of that governmental authority."

8. SHC Plaintiffs request that the Court approve the engagement of ARX Management, LLC as the "Fund Administrator" and "Trustee" (the "Fund Administrator"). ARX Management's address is as follows: 200 Pier Ave, Suite 226, Hermosa Beach, CA 90254. ARX Management submits personally to the jurisdiction of this Court. Upon the dissolution or bankruptcy of ARX Management, its appointment as Fund Administrator shall terminate and the SHC Plaintiffs and Defendants will seek Court approval of their nominated successor Fund Administrator.

9. Until such time that the requirements identified in Paragraph 2.H.3. of the Master Settlement Agreement are met, no settlement monies shall be set apart for an SHC Plaintiff, or otherwise made available so that he or she may draw upon or otherwise control said settlement monies.

10. The Fund, by and through the Fund Administrator, shall only make payments to SHC or the SHC Plaintiffs, or such other claimants to the Fund with valid claims and / or liens.

11. The Fund, by and through the Fund Administrator, may purchase and assign any structured settlements created under any Release Agreements. Any structured settlement annuity contract shall be issued by a life insurance company that is rated A+ or better by A.M. Best Company.[1]

---

[1] Structured Settlement Payments are assigned to a qualified assignee by entering into qualified assignments of such structured settlement payments within the meaning of Section 130(c) of the Internal Revenue Code. The qualified assignee shall, respecting each person who is to receive periodic payments under a settlement agreement, purchase

12. The claims made against the Defendants are made on account of physical bodily injury and arise out of alleged liability in tort or violation of law. The SHC Plaintiffs shall agree in writing to discharge the Fund and the Fund Administrator's liabilities in the making of any structured settlement payments, also known as periodic payments, by executing, along with the Fund Administrator, any necessary documents required or related to the discharge of those liabilities.

13. The Total Settlement Proceeds are the sole property of the Fund. Until such time as monies are distributed, the SHC Plaintiffs shall not possess any rights to demand or receive any portion of the Total Settlement Proceeds or the (custodied) funds or to mortgage, pledge, or encumber the same in any manner. To the extent possible, this Motion shall be construed so as to prevent the SHC Plaintiffs from being in constructive receipt, as determined under federal income tax principles, of any amounts held by the Fund.

14. The Fund Administrator shall be indemnified and held harmless by the SHC Plaintiffs from any claims made by any alleged lien holder, or other person or entity that attempts to assert a right of payment, reimbursement or garnishment against the Fund. Should the Fund Administrator be named as a party to, or threatened to be made a party to, any threatened, pending or completed action, suit or proceeding of any kind, whether civil, administrative or arbitrative, and whether brought by or against or otherwise involving the Fund, by reason of the Fund Administrator having served in any capacity on behalf of the Fund, the Fund Administrator shall be indemnified and held harmless by the Plaintiffs against reasonable

---

one or more qualified funding assets within the meaning of Section 130(d) of the Internal Revenue Code to fund any structured settlement payments assigned to the qualified assignee.

expenses, costs and fees (including attorneys' fees), judgment, awards, costs, amounts paid in settlement, and liabilities of all kinds incurred by the Fund Administrator in connection with or resulting from such actual or threatened action, suit or proceeding; except to the extent that it is finally determined by this Court that the Fund Administrator was grossly negligent or acted with willful misconduct in connection with the administration of this Fund.

15. SHC shall be indemnified and held harmless by the Fund Administrator from any claims, which arise from the negligence or willful misconduct of the Fund Administrator as determined by this Court. Should SHC be named as a party to, or threatened to be made a party to, any threatened, pending or completed action, suit or proceeding of any kind, whether civil, administrative or arbitrative, by reason of the Fund Administrator's negligence or willful misconduct, SHC shall be indemnified and held harmless by the Fund Administrator against reasonable expenses, costs and fees (including attorneys' fees), judgment, awards, costs, amounts paid in settlement, and liabilities of all kinds incurred by SHC in connection with or resulting from such actual or threatened action, suit or proceeding.

16. The SHC Plaintiffs request that no bond be required, provided that all monies received by the SHC BSC Qualified Settlement Fund, which includes all principal and interest earned thereon, shall be deposited in an account held in custody at U.S. Bank National Association, a national banking association doing business in Minneapolis, MN ("U.S. Bank"), in the name of the QSF Administrator, as trustee of the fund and invested by the QSF Administrator in instruments/securities comprised of (i) United States Agency or Treasury issued securities or obligations (or a mutual fund invested solely in such instruments); (ii) cash equivalent securities including commercial paper or short term notes with a minimum rating of

A-1/P-1/AA, SEC registered money market funds and collateralized money market accounts; (iii) interest bearing and non-interest bearing corporate accounts with domestic banks, including the Custodian, which may be held in the custody account or at the issuer bank, subject to maximum Federal Depository Insurance Corporation guarantees; and/or (iv) certificates of deposit subject to maximum Federal Depository Insurance Corporation guarantees which may be held in the custody account or at the issuer bank, either individually or through use of the Certificate of Deposit Account Registry Service ("CDAR") pursuant to a CDARS Deposit Placement Agreement or the Insured Cash Sweep ( ICS) pursuant to the Deposit Placement Agreement with the custody bank.  The Administrator shall be responsible for any and all investment related decisions pursuant to these terms and conditions, such that the following investment policy is implemented: (i) safety of principal; and (ii) zero bank balance sheet exposure.  Any investment losses realized by investment of (custodied) Funds or any portion thereof shall be charged to the (custodied) Funds.

17. The fund shall be held in a custody account at U.S. Bank. The QSF Administrator shall have the power to hire U.S. Bank as custodian and enter into a custody agreement with U.S. Bank on behalf of the fund. The QSF Administrator shall be responsible for any and all investment related decisions, providing instructions to U.S. Bank and/or its investment advisor pursuant to these terms and conditions, such that a principal preservation driven investment policy is implemented. Notwithstanding the foregoing, U.S. Bank shall not be allowed to distribute any income or principal from the Fund except (i) in the course of the purchase of sale of assets in the custody account, as directed, (ii) upon instructions of the QSF Administrator, or, (iii) if requested, upon the order of this Court upon the joint motion of the parties. It is hereby

understood that (i) the custody account is not a trust account, U.S. Bank will be the account's custodian (not trustee), and U.S. Bank is not administering the custody account in a "fiduciary capacity" within the meaning of 12 C.F.R. Section 9.2(e), notwithstanding any provision herein to the contrary; and (ii) a custody relationship is a contractual arrangement, and U.S. Bank's duties are strictly limited to those duties expressly set forth in the custody agreement governing the custody account. The QSF Administrator retains the right to remove U.S. Bank, with or without cause, in its sole and absolute discretion. The QSF Administrator may designate a replacement bank upon the written consent of Claimants' Counsel. In the event of such replacement, the terms and conditions of this paragraph, including without limitation, those addressing bond requirements, investments, and distributions from the Fund, shall apply to any such replacement bank. To the extent the funds are invested in the manner provided for in this Order, the Fund Administrator shall not be liable for any loss(es) which may be incurred by reason of any such investment (or reinvestment).

18. The Fund Administrator is permitted to distribute all excess interest accrued to the Fund, after the payment of all fees associated with the administration of the Fund, related expenses and related taxes, to the beneficiaries on a pro rata basis. For example, if there are four claimants involved in a settlement, with each claimant possessing a 25% interest in the Total Settlement Proceeds, and the fund possesses $100 in accrued interest, after the payment of administration and other fees, expenses and taxes, the $100 would be split evenly among the four claimants. As the example indicates, each beneficiary's share of the excess accrued interest is strictly correlated to their respective percentage interest in the Total Settlement Proceeds.

19. The Fund Administrator shall be authorized to distribute all attorneys' fees and litigation expenses to counsel for Plaintiffs, consistent with existing contingency fee contracts.

20. All taxes on the income of the Fund and expenses and costs incurred in connection with the taxation of the Fund (including, without limitation, the expenses of tax attorneys and accountants) shall be paid out of the Fund, shall be considered to be a cost of administration of the settlement, and shall be paid as instructed by the Fund Administrator.

21. Upon request, the Fund Administrator will prepare and deliver Fund Statements ("Statements") to counsel for the Plaintiffs, counsel for Boston Scientific and/or this Court. The Statements shall include a statement of receipts, investment earnings, and disbursements. The Fund Administrator shall provide the Statement no later than ten (10) business days following the request.

22. The Fund Administrator shall have the right to rely upon any affidavit, certificate, letter, notice, electronic mail or other document believed by the Fund Administrator to be genuine and sufficient, and upon any other evidence believed by the Fund Administrator, in its reasonable judgment, to be genuine and sufficient, which may be provided to the Fund Administrator by SHC.

23. Upon final distribution of all monies paid into the Fund, the Fund Administrator shall take appropriate steps to wind down the Fund and thereafter be discharged from any further responsibility with respect to the Fund.

34. The Fund Administrator will obtain a Federal Taxpayer Identification Number for the SHC BSC Qualified Settlement Fund upon the execution of an Order by this Court establishing the Fund.

**WHEREFORE**, SHC Plaintiffs respectfully request that the Court consent to take continuing jurisdiction over the Fund pursuant to Treas. Reg. Section 1.468B-1(c)(1), and issue an Order which:

1. Establishes said Fund as a Qualified Settlement Fund within the meaning of Treasury Regulation Section 1.468B-1;

2. Appoints ARX Management as Fund Administrator and Trustee pursuant to the terms, conditions and restrictions of this Motion, thereby granting the Fund Administrator the authority to conduct any and all activities necessary to administer this Fund as described in this Motion;

3. Authorizes the Fund Administrator to effect qualified assignments of any resulting structured settlement liability within the meaning of Section 130(c) of the Internal Revenue Code to the qualified assignee;

4. Authorizes the Fund Administrator to distribute all attorneys' fees and litigation expenses to counsel for SHC Plaintiffs, as well as with those persons who are represented by SHC in future settlements, consistent with their existing contingency fee contracts;

5. Authorizes the Fund Administrator, upon final distribution of all monies paid into the Fund, to take appropriate steps to wind down the fund and thereafter discharging the Fund Administrator from any further responsibility with respect to the Fund; and

6. Places this Motion, the Court Order, and any other filings related to the SHC BSC Qualified Settlement Fund under seal.

**DATED** August 4, 2016.                    Respectfully Submitted,

<div style="margin-left: 40%;">

Trent B. Miracle_____
Trent B. Miracle IL #6281491
**SIMMONS HANLY CONROY**
One Court Street
Alton, IL 62002
(618) 259-2222 (Tel.)
(618) 259-2251 (Fax)
tmiracle@simmonsfirm.com


John J. Foley_____
John J. Foley IL #6288152
**SIMMONS HANLY CONROY**
One Court Street
Alton, IL 62002
(618) 259-2222 (Tel.)
(618) 259-2251 (Fax)
jfoley@simmonsfirm.com


**Attorneys for Plaintiffs**

</div>

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 4, 2016, a copy of foregoing **AGREED MOTION TO ADMINISTER SETTLEMENTS RESOLVING CASES AND CLAIMS OF SHC PLAINTIFFS** was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

    Trent B. Miracle_____
    Trent B. Miracle IL #6281491
    **SIMMONS HANLY CONROY**
    One Court Street
    Alton, IL 62002
    (618) 259-2222 (Tel.)
    (618) 259-2251 (Fax)
    tmiracle@simmonsfirm.com

    John J. Foley_____
    John J. Foley IL #6288152
    **SIMMONS HANLY CONROY**
    One Court Street
    Alton, IL 62002
    (618) 259-2222 (Tel.)
    (618) 259-2251 (Fax)
    jfoley@simmonsfirm.com