# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

| | |
|---|---|
| IN RE: BOSTON SCIENTIFIC CORP.<br>PELVIC REPAIR SYSTEM<br>PRODUCTS LIABILITY LITIGATION | MDL No. 2326<br><br>HONORABLE JUDGE JOSEPH R. GOODWIN |

**PRETRIAL ORDER # 157**
**(ORDER TO ADMINISTER SETTLEMENTS RESOLVING CASES**
**AND CLAIMS OF MCDONALD WORLEY, PC PLAINTIFFS)**

Pending is an Unopposed Motion for Approval of Qualified Settlement Fund, filed March 13, 2017. [ECF No. 2527]. McDonald Worley, P.C. ("McDonald Worley"), as counsel for certain plaintiffs in this MDL No. 2326 has moved the Court for entry of an Order to aid in the efficient processing and administration of a Confidential Master Settlement Agreement (the "Settlement Agreement") between Defendant Boston Scientific Corporation and its parent and subsidiary companies ("BSC") and McDonald Worley to resolve the claims of certain claimants against BSC relating to the implant of BSC Pelvic Products (as defined in the Settlement Agreement). In particular, the Motion seeks an Order (1) approving the escrow agreement ("McDonald Worley BSC Escrow Agreement"), attached hereto as Exhibit A, which forms a settlement escrow account named the McDonald Worley BSC Qualified Settlement Fund ("Settlement Escrow") pursuant to the terms of the Settlement Agreement and the McDonald Worley BSC Escrow Agreement established under the Settlement Agreement, (2) retaining continuing jurisdiction and supervision over the Settlement Escrow, and (3) determining that the Settlement Escrow is a "qualified settlement fund" within the meaning of section 468B of the Internal Revenue Code of 1986, as amended ("Code") and Treasury Regulation sections 1.46B-1, et seq. (Regulations").

The Court, having reviewed the Motion and the McDonald Worley BSC Escrow Agreement, and finding good and sufficient cause therefore, hereby **FINDS** and **ORDERS** as follows:

(1) The Unopposed Motion is **GRANTED**;

(2) The terms of the McDonald Worley BSC Escrow Agreement are hereby approved;

(3) The Settlement Escrow constitutes a qualified settlement fund within the meaning of section 468B of the Internal Revenue Code of 1986 as amended (the "Code") and Treasury Regulation sections 1.46B-1 *et seq*. The Court further retains continuing jurisdiction and supervision over the Settlement Escrow, in accordance with the terms of the McDonald Worley BSC Escrow Agreement;

The court **DIRECTS** the Clerk to file a copy of this order in 2:12-md-2326 and it shall apply to each member case previously transferred to, removed to, or filed in this district, where applicable, which includes counsel in all member cases up to and including civil action number 2:17-cv-01862. In cases subsequently filed in this district, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action at the time of filing of the complaint. In cases subsequently removed or transferred to this court, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action upon removal or transfer. It shall be the responsibility of the parties to review and abide by all pretrial orders previously entered by the court. The orders may be accessed through the CM/ECF system or the Court's website at www.wvsd.uscourts.gov.

ENTER: March 15, 2017

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

Exhibit A

## MCDONALD WORLEY BSC
## ESCROW AGREEMENT

This McDonald Worley BSC Escrow Agreement (the "Escrow Agreement") is entered into and shall be effective as of March 8, 2017 by and among Donald Worley, Esquire ("Counsel"), on behalf of the One Hundred Fifty Eight (158) claimants ("Claimants") represented by McDonald Worley, PC. ("Claimants' Counsel"), which Claimants are settling claims against Boston Scientific Corporation ("Defendant") in connection with a Master Settlement Agreement signed by the Parties on December 30, 2016; Esquire Bank, in its capacity as Depository Bank (the "Depository Bank "); and, Providio MediSolutions, LLC in its capacity as administrator pursuant to this Escrow Agreement (the "Administrator") (Defendant, Claimants' Counsel, the Depository Bank Depository Bank and the Administrator are referred to herein collectively as the "Parties").

### RECITALS

WHEREAS, Defendant and Claimant's Counsel have reached a confidential settlement agreement to fully, finally, and forever resolve, discharge, and settle all cases and/or claims asserted by the Claimants (such confidential settlement agreement, including any amendments thereto, the "Settlement Agreement");

WHEREAS, this Escrow Agreement sets forth the terms and conditions whereby the funds that Defendant deposits, or causes to be deposited, into the escrow account (the "Settlement Escrow"), to be known as the "McDonald Worley BSC Qualified Settlement Fund" established pursuant to this Escrow Agreement will be retained, invested, and distributed therefrom to effectuate the terms of the Settlement Agreement;

WHEREAS, the Settlement Agreement contemplates that the Settlement Escrow shall be, and shall be operated as, a "qualified settlement fund" within the meaning of Section 1.468-B-1, et seq., of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code (the "Treasury Regulations");

WHEREAS, the Settlement Escrow will be formed according to Court order and will be subject to the continuing jurisdiction of the United States District Court for the Southern District of West Virginia Charleston Division (the "Court"); and

NOW, THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Parties agree as follows:

### AGREEMENT

I. **PURPOSE OF THE ESCROW AGREEMENT**

The purpose of this Escrow Agreement shall be to facilitate the performance of the deposit and payment obligations and related obligations set forth in the Settlement Agreement.

II. APPOINTMENT OF Depository Bank

Esquire Bank is hereby appointed to act as Depository Bank in accordance with the terms hereof, and Esquire Bank hereby accepts such appointment. The Depository Bank shall have all the rights, powers, protections, duties, and obligations expressly provided herein.

III. APPOINTMENT OF ADMINISTRATOR

Providio MediSolutions, LLC, is hereby appointed to act as Escrow Agent and Administrator (collectively "Administrator") in accordance with the terms hereof, and Providio MediSolutions, LLC hereby accepts such appointment. The Administrator shall serve as the "administrator" and "escrow agent" of the Settlement Escrow as "qualified settlement fund" within the meaning of Treasury Regulation section 1.468B-2(k)(3), and shall have all such additional rights, powers, protections, duties, and obligations expressly provided herein.

IV. ACCOUNTS WITHIN SETTLEMENT ESCROW

The Settlement Escrow shall initially be comprised of one account (the "Account"), to be used solely for such purposes as are set forth in Section I above. With approval of Claimants' Counsel, the Administrator may direct Depository Bank to establish one or more additional Accounts and/or sub accounts for purposes of this Escrow Agreement.

V. DEPOSITS INTO SETTLEMENT ESCROW

    A. Deposit of Assets. Defendant shall deposit, or cause to be deposited, into the Settlement Escrow only such settlement consideration, and at such time, as provided in the Settlement Agreement (the "Settlement Amount"), and further provided that all deposits shall be made in immediately available funds. The Settlement Amount that Defendant deposits, or causes to be deposited, into the Settlement Escrow pursuant to this Section V shall be held in the Settlement Escrow until such time as the Depository Bank receives instructions pursuant to Section VI to distribute such amounts from the Settlement Escrow. The amount of all deposits into the Settlement Escrow, and the interest, net realized gains, and other earnings accrued on such deposits, (regardless of in which Accounts such amounts are held) are collectively referred to herein as the "Escrowed Funds".

    B. Acceptance of Assets. To further the purposes of this Escrow Agreement, the Depository Bank agrees to accept the Settlement Amount that Defendant deposits, or causes to be deposited, into the Settlement Escrow and shall deposit such amount into the Account, and any earnings thereon, and the Depository Bank and the Administrator assume such liability and responsibility for the administration and distribution of the Escrowed Funds, in accordance with and subject to the terms of this Escrow Agreement.

VI. DISTRIBUTION OF ESCROWED FUNDS; TRANSFERS BETWEEN ACCOUNTS

    A. Distribution of Escrowed Funds. The Parties acknowledge that the Escrowed

2

Funds are to be distributed solely in the manner and at the times, as set forth in this Escrow Agreement as follows:

1. Upon the completion by Claimants of the prerequisites to disbursement set forth in the Settlement Agreement, and further upon such schedule as mutually agreed upon by Claimants' Counsel and the Administrator, the Administrator shall direct the Escrow Agent in writing, to:

   a. transfer from the Account to specific lien holders the amount directed by the lien resolution administrator for each Claimant;
   b. hold back in the Account, for each Claimant, the applicable fees for the services of the Administrator and the lien resolution administrator; and
   c. from the Account, distribute the remainder for each Claimant to Claimants' Counsel (for their attorney fees and expenses as well as each Claimant's net settlement monies), as applicable.

2. Upon written direction from the Administrator, the Escrow Agent shall pay from the Account to the Administrator and lien resolution administrator respectively the specified amounts for any fees owed to Administrator and the lien resolution administrator (as approved by Claimants' Counsel).

3. All interest or investment income earned on the Account shall inure to the benefit of the Claimants. Upon distribution of all funds described above, any remaining funds due to accrued interest and/or investment income shall be distributed to the Administrator to be applied first to the cost of winding up the Settlement Escrow (including, without limitation, filing the final tax return for the Settlement Escrow) and, if there is a balance after the wind up, it shall be retained by Administrator pursuant to Section X below.

VII. DISTRIBUTIONS FOR QUALIFIED STRUCTURED SETTLEMENTS

   A. Qualified Structured Settlements. Provided that the requirements of Section VI have been met, the Escrow Agent shall, at the election of a Claimant and/or Claimants' Counsel (for the purposes of this Section VII, a "Qualified Structured Settlement Electing Party"), and upon written instruction of the Administrator, distribute to a Qualified Assignee (as defined in Section VII.A.1) specified amounts which would otherwise be distributed to Claimants and/or Claimants' Counsel pursuant to Section VI, for purposes of funding a Qualified Structured Settlement, provided that the following requirements are satisfied:

3

1. Each Qualified Structured Settlement shall meet the requirements of section 130 of the Code, pursuant to which (a) the Administrator, on behalf of the Settlement Escrow, agrees to pay amounts otherwise payable in a lump sum to Claimants' Counsel, as agent of the Claimants, in the form of periodic payments over time ("Periodic Payments"), conditioned upon the Administrator's "qualified assignment"(as defined under section 130(c) of the Code) ("Qualified Assignment") of such Periodic Payments obligation to an assignee (the "Qualified Assignee"); and (b) the Qualified Assignee then becomes the sole obligor with respect to the Periodic Payment and funds the obligation to make Periodic Payments through the purchase of one or more qualified funding assets (a "Qualified Funding Asset" as defined under section 130(d) of the Code) which relate to the Periodic Payment obligations, provided that all such Qualified Funding Assets must be issued by a life insurance company that is rated A+ or better by A.M. Best Company. Further, such Qualified Assignee (a) shall be the sole owner of the Qualified Funding Asset and shall have all rights of ownership therein; and (b) must not be related (within the meaning of Code sections 267(b) and 707(b)(1)) to the Depository Bank, the Administrator or Defendant (including to any liability insurance carrier for either the Depository Bank,, the Administrator or Defendant), and provided further that any such Qualified Assignee must neither be controlled by nor control, directly or indirectly, the Settlement Escrow.

2. The Depository Bank shall not distribute any such amounts with respect to such Qualified Structured Settlement until such time as the Administrator has assigned all obligations to make Periodic Payments to the Qualified Assignee through the Administrator's execution of a qualified structured settlement assignment and release form which (a) has already been properly executed by all other required parties to the Qualified Structured Settlement, and (b) contains no language inconsistent with this Escrow Agreement, the Settlement Agreement or the Release.

3. The Qualified Assignee shall be the sole party to whom the Administrator, the Depository Bank or the Settlement Escrow owes the obligation to pay the amount being used to fund the Qualified Structured Settlement for all purposes, including, as applicable, section 130(c) of the Code or Treasury Regulation section 1.461-4(g)(1)(ii), and, upon such Qualified Assignment by the Administrator and payment of the amount used to fund the Qualified Structured Settlement from the Settlement Escrow to the Qualified Assignee, the Qualified Structured Settlement Electing Party irrevocably releases and discharges, and gives up any right, under any circumstances, to seek from the Administrator, the Depository Bank,, the Settlement Escrow or the Released Parties (as such term is defined in the Settlement Agreement) (a) any further payments with regard to the Qualified Structured Settlement, including in any circumstances where, for any reason, the applicable party fails to receive all the future Periodic Payments

at any time, (b) any further payments with respect to any action of the Administrator, the Depository Bank, the Settlement Escrow or the Released Parties, related to the Qualified Structured Settlement, as well as (c) any further payments regarding any tax, financial or other consequences of the Qualified Structured Settlement.

4. The Qualified Structured Settlement Electing Party shall, as part of the Qualified Structured Settlement, further agree to the following terms:

   a. The Qualified Assignee may have any the insurance or annuity company which has issued the Qualified Funding Asset mail payments directly to the appropriate payee; provided, further, that the Structured Settlement Electing Party shall be responsible for maintaining a current mailing address for the appropriate payee with each insurance or annuity company.

   b. With respect to any Periodic Payments, the Qualified Structured Settlement Electing Party acknowledges and agrees that:
      (i) None of the Periodic Payments may be accelerated, deferred, increased, or decreased by the Qualified Structured Settlement Electing Party or by any payee;
      (ii) Neither the Qualified Structured Settlement Electing Party nor any payee shall have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise; and
      (iii) The obligation of any Qualified Assignee to make the Periodic Payments shall be no greater than that of the Depository Bank, immediately preceding the assignment of the Periodic Payment obligation.

## VIII. INVESTMENT OF ESCROWED FUNDS

A. Investment; Preservation of Principal. As directed in writing by the Administrator (in a form to be agreed in by the Administrator and the Depository Bank), the Depository Bank shall invest and reinvest from time to time the Escrowed Funds in: (i) United States Agency or Treasury issued securities or obligations (or a mutual fund invested solely in such instruments); (ii) cash equivalent securities including commercial paper or short term notes with a minimum rating of A-1/P-1/AA SEC registered money market funds and collateralized money market accounts; (iii) interest bearing and non-interest bearing corporate accounts subject to Federal Depository Insurance Corporation guarantees; and/or (iv) certificates of deposit subject to Federal Depository Insurance Corporation guarantees which may be held in the custody account or at the issuer bank, either individually or through use of the Certificate of Deposit Account Registry Service ("CDARS") and /or Insured Cash Sweep ("ICS") pursuant to the CDARS/ICS Deposit Placement Agreement with the Bank such funds shall be invested by the Fund Administrator such that

5

safety of the principal investment policy is implemented. The Administrator shall be responsible for any and all investment related decisions pursuant to these terms and conditions, such that the following investment policy is implemented: (i) safety of principal; and (ii) zero bank balance exposure. Any investment losses realized by investment of Escrowed Funds or any portion thereof shall be charged to the Escrowed Funds. To the extent the Depository Bank invests any funds in the manner provided for in this Section VIII, the Depository Bank and Administrator shall not be liable for any loss(es) which may be incurred by reason of any such investment (or reinvestment).

    B.    Use of Interest or Investment Income. All interest on or income realized by investment of the Escrowed Funds or any portion hereof shall be accumulated and added to the Escrowed Funds, and shall be disbursed in accordance with Section VI.

IX.    TAX MATTERS

    A.    Settlement Escrow Account as a Qualified Settlement Fund. The Settlement Escrow is structured and shall be operated in a manner so that it qualifies as a "qualified settlement fund" under section 468B of the Internal Revenue Code of 1986, as amended (the "Code") and Treasury Regulation sections 1.468B-1, *et seq.* Specifically, (1) the establishment of the Settlement Escrow under the terms and conditions of this Escrow Agreement is subject to Court approval, and no deposits into or distributions from the Settlement Escrow shall be made until such Court approval is obtained; (2) the Settlement Escrow is subject to the continuing jurisdiction and supervision of the Court; (3) the Settlement Escrow is established to resolve or satisfy claims of alleged tort or violation of law arising out of implantation of one or more Boston Scientific Corporation Pelvic Products; and (4) the Settlement Escrow is an escrow account, and its assets are, and will be, segregated from the general assets of Defendant and deposited herein. The Settlement Escrow is composed of the Accounts, which together constitute a single qualified settlement fund. Consistent with the terms of the Settlement Agreement and this Escrow Agreement, the Administrator shall take all actions, and Depository Bank, t agrees to make the Settlement Escrow take all actions necessary to create and maintain the Settlement Escrow's status as a qualified settlement fund, and the Administrator and Depository Bank agree not to take any action that will adversely affect the qualification of the Settlement Escrow as a qualified settlement fund. The Administrator shall serve as the "administrator" within the meaning of Regulation Section 1.468B-2(k)(3).

    B.    Tax Preparation, Payment, Reporting, and Withholding Requirements. In its role as "administrator" of the Settlement Escrow within the meaning of Treasury Regulation section 1.468B-2(k)(3), the Administrator shall be responsible for the timely and proper performance of the undertakings specified herein and in the regulations promulgated under section 468B of the Code, including, but not limited to, the obtaining of an employer identification number for the Settlement Escrow;

the filing of all required federal, state or local tax and information returns, including in accordance with the provisions of Treasury Regulation section 1.468B-2(k)(l); any required withholding of tax; the payment of any federal, state or local taxes (including estimated taxes) and associated tax-related penalties and interest for which the Settlement Escrow may be liable,; responding to any questions from or audits regarding such taxes by the Internal Revenue Service or any state or local tax authority; and compliance with any other tax-related requirements. The Administrator may retain and compensate independent, certified public accountants to consult with and advise the Administrator with respect to the preparation of any and all appropriate income tax returns, information returns or compliance withholding requirements. In no event shall Defendant have any liability or responsibility for any amounts payable or withholdable from the Settlement Escrow pursuant to this Section IX.

C. Savings Provision; Failure to Qualify as a Qualified Settlement Fund.

1. Notwithstanding anything herein to the contrary, in the event that any portion of this Settlement Escrow shall at any time be considered cause for the Settlement Escrow to fail to qualify as a qualified settlement fund section 468B of the Code together with any and all Treasury Regulations and Internal Revenue Service Rulings, Notices, Announcements, directives, and guidance thereunder, such offending portion of this Escrow Agreement shall be considered null, void, and of no effect, without any action by any court or by the Administrator, so that this Settlement Escrow continues to qualify as a qualified settlement fund in compliance with section 468B of the Code and the applicable administrative authority and announcements thereunder. In the event that this Section IX.C applies to render an offending Section null, void, or of no effect, the remainder of this Escrow Agreement shall not be affected thereby, and each remaining term and Section of the Agreement shall be valid and enforced to the fullest extent permitted by law.

2. Notwithstanding any effort, or failure, of the Administrator, the Depository Bank,, and the other Parties to treat the Settlement Escrow as a "qualified settlement fund" within the meaning of section 1.468B-1 of the Treasury Regulations effective as of the date hereof, any additional tax liability, interest, penalties or other tax-related losses of any kind (such tax liability, interest, penalties and/or losses hereinafter collectively referred to as "Tax Detriments") incurred by Defendant resulting from income earned by the Settlement Escrow shall be reimbursed from the Settlement Escrow in the amount of such Tax Detriments upon Defendant's written request to the Depository Bank,.

X. ADDITIONAL MATTERS RELATING TO DUTIES, LIABILITIES, AND RIGHTS OF DEPOSITORY BANK AND ADMINISTRATOR

A. Compensation. Administrator will be paid $150/Claimant plus accrued interest (if any) on the Settlement Funds for its services and will be promptly reimbursed such fees, costs, and expenses incurred in connection with the performance of its respective duties and obligations hereunder. All such fees, costs, and expenses shall be paid on behalf of each Claimant out of their respective Escrowed Funds as set forth in Section VI.

B. Preparation of Financial Statements and Audited Financial Records. The Administrator shall keep records of distributions from and transfers within the Settlement Escrow that reflect how those distributions and transfers link to each of the Claimants and Claimants' Counsel. The Administrator shall, upon request, within ten days of any such request, produce financial statements for the Settlement Escrow, including receipts, disbursements and earnings. On a quarterly basis, no later than ten business days after the close of each calendar quarter, provide, the Administrator shall provide via email or other electronic method financial statements, showing all receipts, disbursements, and earnings of the Settlement Escrow.

C. No Implied Duties. This Escrow Agreement expressly and exclusively sets forth the respective duties, responsibilities and obligations of the Depository Bank, and Administrator with respect to any and all matters pertinent hereto and no additional duties, responsibilities, or obligations shall be read into this Escrow Agreement. It is further understood that the duties of the Depository Bank set out herein are ministerial in nature and are not discretionary.

D. Indemnification. The Depository Bank and the Administrator, as well as their respective officers, directors, employees and agents (collectively, "Indemnified Parties") shall be indemnified by the Escrowed Funds, and held harmless against, any and all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by Depository Bank and the Administrator, respectively, providing advice to it on this Escrow Agreement) as and when incurred, arising out of or based upon any act, omission, alleged act or alleged omission by the Indemnified Parties or any other cause, in any case in connection with the acceptance of, or performance or non-performance by the Indemnified Parties of, any of the Indemnified Parties' duties under this Escrow Agreement, except as a result of the Indemnified Parties' bad faith, willful misconduct or gross negligence. Provided, however, that this provision does not give the Indemnified Parties any rights against Defendant, which shall have no obligation or responsibility with respect to the Indemnified Parties, and no responsibility or liability with respect to the actions, duties, or responsibilities of the Indemnified Parties.

E. Reliance. The Depository Bank and/or the Administrator shall have the right to rely upon any affidavit, certificate, letter, notice, electronic mail or other document believed by such party to be genuine and sufficient, and upon any other evidence

8

believed by such party, in its reasonable judgment, to be genuine and sufficient, which may be provided to either of such parties by Claimants' Counsel.

F. Resignation and Removal of Depository Bank; Appointment of Successor.

1. Resignation and Removal. The Depository Bank or any successor may resign by a written notice delivered to Claimants' Counsel specifying the effective date of such resignation, which date shall not be earlier than ninety (90) calendar days following the receipt by Claimants' Counsel of the notice of resignation. Such resignation shall take effect on the date specified on the notice of resignation, unless a successor agent has been appointed in accordance with the provisions of this Section X.F and has accepted such appointment on an earlier date, in which case such resignation shall take effect immediately upon receipt by such successor Depository Bank of the Escrowed Funds. The Depository Bank may be removed by the joint action of Claimants' Counsel, with or without cause at any time upon thirty (30) days' prior written notice to Depository Bank,, which notice may be waived by Depository Bank,, and the Depository Bank, removal shall be effective upon the expiration of such thirty (30) days or upon the Depository Bank, waiver of such notice.

2. Appointment of Successor. If at any time Depository Bank shall resign, be removed, or otherwise become incapable of acting as Depository Bank pursuant to this Escrow Agreement, or if at any time a vacancy shall occur in the office of Depository Bank for any other cause, a successor agent shall be appointed by Claimant's Counsel by a written instrument delivered to the successor agent. Upon the appointment and acceptance of any successor agent hereunder, the former Depository Bank shall transfer the Escrowed Funds to its successor.

G. Resignation and Removal of Administrator; Appointment of Successor.

1. Resignation and Removal. The Administrator or any successor may resign by a written notice delivered to Claimants' Counsel specifying the effective date of such resignation, which date shall not be earlier than sixty (60) days following the receipt by Claimants' Counsel of the notice of resignation. Such resignation shall take effect on the date specified on the notice of resignation, unless a successor has been appointed in accordance with the provisions of this Section X.G and has accepted such appointment on an earlier date. The Administrator may be removed by the joint action of Claimants' Counsel, with or without cause at any time upon thirty (30) days' prior written notice to the Administrator, which notice may be waived by Administrator, and the Administrator's removal shall be effective upon the expiration of such thirty (30) days or upon the Administrator's waiver of such notice.

2. Appointment of Successor. If at any time the Administrator shall resign, be removed, or otherwise become incapable of acting pursuant to this Escrow Agreement, or if at any time a vacancy shall occur in the office of Administrator for any other cause, a successor shall be appointed by Claimants' Counsel by a written instrument delivered to the successor.

## XI. TERMINATION OF SETTLEMENT ESCROW ACCOUNT

The Settlement Escrow will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of Section VI (the "Termination"). Upon Termination of the Settlement Escrow in accordance with this Section XI, Depository Bank shall be relieved of any and all further obligations and released from any and all liability under this Escrow Agreement, except as otherwise specifically provided herein.

## XII. MISCELLANEOUS

A. Notices. Any notice of other communication hereunder must be given in writing and either: (i) delivered in person; (ii) transmitted by telefax or other telecommunications mechanism, provided that any notice to be given is also mailed as provided in clause (iii); (iii) mailed by registered, express, or certified mail, postage prepaid return receipt requested; or (iv) delivered by a generally recognized courier or messenger service that provides written acknowledgement of receipt by addressee, postage prepaid as follows:

If to Defendant, to:

Peter Gafner, Esq.
Vice President and Chief Litigation Officer
Boston Scientific Corporation
One Scimed Place
Maple Grove, MN 55311-1566
Office: (763) 494-2442
Email: Peter.Gafner@bsci.com

Michael A. Tanenbaum, Esq.
Sedgwick LLP
1085 Raymond Blvd, 16th Floor
Newark, NJ 07102
Office: (973) 820-0019
Email: Michael.Tanenbaum@Sedgwicklaw.com

If to Claimants' Counsel, to:

10

       Donald Worley, Partner – McDonald Worley, PC
       1770 St. James Place, Ste. 100
       Houston, TX 77056
       Office: (713) 523-5500
       Email: don@mcdonaldworley.com

If to the Depository Bank,, to:

Esquire Bank
100 Jericho Quadrangle
Suite 100
Jericho, NY 11753
Office: 800-996-0213

If to the Administrator, to:

       Heather Magic, VP Operations
       Providio MediSolutions, LLC
       5613 DTC Parkway, Suite 700
       Greenwood Village, CO 80111
       Office: 877-253-3120 x1501
       Fax: 866-862-3628
       Email: hmagic@providiollc.com

or to such other address or to such other person as any Party shall have last designated by notice to the other Party. Each such notice or other communication shall be deemed received hereunder; (1) if given by telecommunication, when transmitted to the applicable number as specified in (or pursuant to) this Section; (2) if given by mail or courier service, three business days after such communication is dispatched, addresses as aforesaid; or (3) if given by any other means, when actually received at such address.

B.    Jurisdiction. The Parties acknowledge that the Court shall retain jurisdiction over the implementation, enforcement, and performance of this Escrow Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Escrow Agreement or to the applicability of this Escrow Agreement shall be governed by and interpreted according to the substantive laws of the State of Colorado without regard to its choice of law or conflict of laws principles.

C.    Entire Agreement. This Escrow Agreement constitutes the entire agreement and understanding of the Parties hereto in respect of the matters discussed herein. Any modification of this Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of

11

the parties hereto. This Escrow Agreement shall be construed so as to be consistent with the terms of the Settlement Agreement and, in the event of any conflict between the terms of this Escrow Agreement and the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control.

D. Assignment. This Agreement is binding upon and will inure to the benefit of the Parties hereto and their respective successors and permitted assigns, but will not be assignable, by operation of law or otherwise, by any Party hereto without the prior written consent of the other Party.

E. Sections and Other Headings. Sections or other headings contained in this Escrow Agreement are for reference purposes only and will not affect in any way the meaning or interpretation of this Escrow Agreement.

F. Amendments; Waivers. All Parties must approve any amendment to this Escrow Agreement in writing. Any waiver of any right or remedy provided for in this Escrow Agreement requires the consent of the Party waiving such right or remedy. Every amendment or waiver of any provision of this Escrow Agreement must be made in writing and designated as an amendment or waiver, as appropriate. No failure by any party to insist on the strict performance of any provision of this Escrow Agreement or to exercise any right or remedy hereunder, will be deemed a waiver of such performance right or remedy or of any other provision of this Escrow Agreement. This Escrow Agreement shall not be modified or amended in any way that could jeopardize, impair, or modify the Escrow Account's qualified settlement fund status.

G. Counterparts. This Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Escrow Agreement.

H. Severability. If any provision of this Escrow Agreement is held to be unenforceable for any reason, it will be adjusted rather than voided, if possible, to achieve the intent of the Parties to the extent possible. In any event, all other provisions of this Escrow Agreement will be deemed valid and enforceable to the extent possible.

I. Confidentiality. All information disclosed by any Party (or its representatives), whether before or after the date hereof, in connection with the transactions contemplated by or the discussion and negotiations preceding this Escrow Agreement, to any other Party (or its representatives) will be kept confidential by such other Party and its representatives and will not be used by any such persons other than as contemplated by this Escrow Agreement, expect to the extent that such information: (a) was known by the recipient when received; (b) is or hereafter becomes lawfully obtainable from other sources; (c) is necessary or appropriate to disclose to a governmental entity having jurisdiction over the Parties, or as may otherwise be required by applicable law or by the Court; or (d) to the extent such

duty as to confidentiality is waived in writing by the other Party.

IN WITNESS WHEREOF, each of the Parties hereto has caused this Escrow Agreement to be executed on the day and year first above written.

SO AGREED ON BEHALF OF CLAIMANTS' COUNSEL:

By: _____
Donald Worley, Esquire
Partner
McDonald Worley, PC

SO AGREED ON BEHALF OF ESQUIRE BANK, AS Depository Bank,

By: _____
Sean Miller
Retail Director
Esquire Bank

SO AGREED ON BEHALF OF PROVIDIO MEDISOLUTIONS, LLC, AS ADMINISTRATOR

By: _____
Ginger Susman, Esquire
President