IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: BOSTON SCIENTIFIC CORP.
PELVIC REPAIR SYSTEM
PRODUCTS LIABILITY LITIGATION  MDL No. 2326

---

THIS DOCUMENT RELATES TO THE CASES ON THE ATTACHED EXHIBIT A

MEMORANDUM OPINION AND ORDER
(*Daubert* Motion re: Dr. Stephen F. Badylak, D.V.M., Ph.D., M.D.)

Pending in *In re Boston Scientific Corp.*, No. 2:12-md-2326, MDL 2326, is the Plaintiffs' Motion to Exclude the Opinions and Testimony of Stephen F. Badylak, D.V.M., Ph.D., M.D. [ECF No. 5826]. The Motion is now ripe for consideration because the briefing is complete. As set forth below, the plaintiffs' Motion is **DENIED**.

I.  Background

This group of cases resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation ("MDL") concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the six remaining MDLs, there are more than 17,000 cases currently pending, approximately 3800 of which are in the Boston Scientific Corp. ("BSC") MDL, MDL No. 2326.

In an effort to manage the massive BSC MDL efficiently and effectively, I decided to conduct pretrial discovery and motions practice on an individualized basis. To this end, I selected certain cases to become part of a "wave" of cases to be prepared for trial and, if necessary, remanded.

1

Upon the creation of a wave, I enter a docket control order subjecting each active case in the wave to the same scheduling deadlines, rules regarding motion practice, and limitations on discovery. *See, e.g.*, Pretrial Order ("PTO") # 165, *In re Bos. Sci. Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-02326, June 21, 2017, http://www.wvsd.uscourts.gov/MDL/boston/orders.html. Included among the discovery rules imposed by the court is the obligation of the parties to file *Daubert* motions seeking to limit or exclude the testimony of general causation experts in the main MDL, MDL 2326.

## II. Legal Standard

Under Federal Rule of Evidence 702, expert testimony is admissible if it will "help the trier of fact to understand the evidence or to determine a fact in issue" and (1) is "based upon sufficient facts or data" and (2) is "the product of reliable principles and methods," which (3) has been reliably applied "to the facts of the case." Fed. R. Evid. 702. A two-part test governs the admissibility of expert testimony. The evidence is admitted if it "rests on a reliable foundation and is relevant." *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 597 (1993). The proponent of expert testimony does not have the burden to "prove" anything. However, he or she must "come forward with evidence from which the court can determine that the proffered testimony is properly admissible." *Md. Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998).

The district court's role as gatekeeper is an important one. "[E]xpert witnesses have the potential to be both powerful and quite misleading"; the court must "ensure that any and all scientific testimony . . . is not only relevant, but reliable." *Cooper v.*

2

*Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 588, 595; *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999)). I "need not determine that the proffered expert testimony is irrefutable or certainly correct. As with all other admissible evidence, expert testimony is subject to testing by '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *United States v. Moreland*, 437 F.3d 424, 431 (4th Cir. 2006) (alteration in original) (citation omitted) (quoting *Daubert*, 509 U.S. at 596); *see also Md. Cas. Co.*, 137 F.3d at 783 ("All *Daubert* demands is that the trial judge make a 'preliminary assessment' of whether the proffered testimony is both reliable . . . and helpful.").

*Daubert* mentions specific factors to guide the overall relevance and reliability determinations that apply to all expert evidence. They include (1) whether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community. *United States v. Crisp*, 324 F.3d 261, 266 (4th Cir. 2003) (quoting *Daubert*, 509 U.S. at 593-94).

Despite these factors, "[t]he inquiry to be undertaken by the district court is 'a flexible one' focusing on the 'principles and methodology' employed by the expert, not on the conclusions reached." *Westberry*, 178 F.3d at 261 (quoting *Daubert*, 509 U.S. at 594-95); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("We

agree with the Solicitor General that '[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" (alteration in original)); *see also Crisp*, 324 F.3d at 266 (noting "that testing of reliability should be flexible and that *Daubert*'s five factors neither necessarily nor exclusively apply to every expert").

With respect to relevancy, *Daubert* also explains:

> Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful. The consideration has been aptly described by Judge Becker as one of "fit." "Fit" is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes. . . . Rule 702's "helpfulness" standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.

*Daubert*, 509 U.S. at 591-92 (citations and internal quotation marks omitted).

### III. Analysis

Dr. Badylak is the Deputy Director of the McGowan Institute for Regenerative Medicine, Director of the Center for Preclinical Studies, and a tenured professor with the Department of Surgery at the University of Pittsburgh.

#### A. Material Safety Data Sheets ("MSDS")

First, plaintiffs seek to exclude Dr. Badylak's opinions related to MSDSs created by Chevron Phillips for polypropylene on the basis that his opinions constitute improper state of mind or intent testimony. Specifically, Dr. Badylak intends to offer the opinion that the Medical Application Caution contained on the MSDS was not supported by any scientific data. The Medical Application Caution

4

states, "Do not use this Chevron Phillips Chemical Company LP material in medical applications involving permanent implantation in the human body or permanent contact with internal body fluids or tissues." I agree with BSC that Dr. Badylak's opinion regarding the scientific support for this warning is not improper "state of mind" testimony. Therefore, the plaintiffs' Motion on this point is **DENIED**.

### B. Risk-Benefit Analysis or Safety and Efficacy

Second, plaintiffs contend that Dr. Badylak should be precluded from opining on the safety and efficacy of polypropylene mesh devices because he has not reviewed the applicable scientific literature and he has no clinical experience using these devices. Dr. Badylak's expert report indicates that he reviewed more than two hundred relevant scientific publications, including more than twenty publications evaluating the safety and efficacy of BSC devices. Furthermore, Dr. Badylak explains that he is more familiar with the body of literature reviewing the safety and efficacy of surgical mesh generally, versus literature specific to any one device. This explanation does not undermine his qualifications but instead clarifies his approach. If there are certain device-specific publications that Dr. Badylak failed to review in preparing his expert report, plaintiffs are free to ask him about those publications on cross-examination.

Similarly, the plaintiffs' arguments regarding Dr. Badylak's clinical experience are also without merit. Dr. Badylak has extensive experience in the field of biomaterials, including the design of implantable surgical mesh devices. Accordingly,

5

the plaintiffs' Motion with regard to Dr. Badylak's safety and efficacy opinions is **DENIED**.

### C. Lack of Correlation Between Microscopic Findings of Explanted Mesh and Clinical Symptoms

Third, plaintiffs seek to exclude Dr. Badylak's opinion that microscopic findings of explanted polypropylene mesh "does not correlate to any clinical finding of pain or other purported adverse event." Plaintiffs contend that BSC never disclosed that Dr. Badylak would offer this opinion. However, BSC points out that this opinion appears in a number of Dr. Badylak's *case-specific* supplemental reports. As this opinion is case-specific, arguments on whether to exclude the opinion are better suited for case-specific *Daubert* motions, filed in the individual cases in which the opinion will be offered. Accordingly, the plaintiffs' Motion on this point is **DENIED**.

### D. Degradation

Finally, plaintiffs seek to exclude Dr. Badylak's opinions regarding oxidative degradation because he 1) failed to investigate an alternative theory of degradation proposed by Dr. Iakovlev (plaintiffs' expert), and 2) contradicted himself during his deposition by acknowledging the "phenomenon" of oxidative reactions. First, Dr. Badylak explained during his deposition that he did consider a number of alternative theories of degradation. His failure to fully investigate the particular theory proposed by the plaintiffs' expert does not render his opinions unreliable. If plaintiffs believe that Dr. Badylak did not give sufficient consideration to the alternative theory proposed by Dr. Iakovlev, they can address this purported deficiency on cross-examination.

6

Second, after acknowledging the "phenomenon" of oxidative reactions, Dr. Badylak stated that he does not believe that oxidative reactions at the surface of polypropylene result in the degradation that causes further problems. Upon review of the deposition, I do not find Dr. Badylak's testimony sufficiently contradictory to undermine the reliability of his expert opinions. Accordingly, the plaintiffs' Motion with regard to degradation is **DENIED**.

IV. Conclusion

To summarize, the plaintiffs' *Daubert* Motion concerning Dr. Badylak [ECF No. 4826] is **DENIED**.

The court **DIRECTS** the Clerk to file a copy of this Memorandum Opinion and Order in 2:12-md-2326 and all individual cases listed on the attached Exhibit A. The court further **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 29, 2018

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

| Case Number | Case Name |
|---|---|
| 2:17-cv-02588 | Adams v. Boston Scientific Corporation |
| 2:17-cv-01837 | Allen v. Boston Scientific Corporation |
| 2:17-cv-02443 | Allex v. Boston Scientific Corporation |
| 2:17-cv-02243 | Alvarado v. Boston Scientific Corporation |
| 2:17-cv-02202 | Atwood v. Boston Scientific Corporation |
| 2:17-cv-00701 | Babcock v. Boston Scientific Corporation |
| 2:17-cv-02589 | Barnett v. Boston Scientific Corporation |
| 2:17-cv-01996 | Benson v. Boston Scientific Corporation |
| 2:17-cv-02730 | Black v. Boston Scientific Corporation |
| 2:17-cv-02446 | Blalock v. Boston Scientific Corporation |
| 2:17-cv-01243 | Brown v. Boston Scientific Corporation |
| 2:17-cv-02111 | Busby v. Boston Scientific Corporation |
| 2:17-cv-02638 | Buttke v. Boston Scientific Corporation |
| 2:17-cv-02447 | Casale v. Boston Scientific Corporation |
| 2:17-cv-02590 | Childress v. Boston Scientific Corporation |
| 2:17-cv-02110 | Clark v. Boston Scientific Corporation |
| 2:17-cv-02448 | Clark v. Boston Scientific Corporation |

| | |
|---|---|
| 2:17-cv-02449 | Cole v. Boston Scientific Corporation |
| 2:17-cv-01940 | Conley v. Boston Scientific Corporation |
| 2:17-cv-02505 | Cutlip v. Boston Scientific Corporation |
| 2:17-cv-02486 | Daniell v. Boston Scientific Corporation |
| 2:17-cv-01074 | Dembski v. Boston Scientific Corporation |
| 2:17-cv-02592 | Dickeson v. Boston Scientific Corporation |
| 2:17-cv-01979 | Dunford et al v. Boston Scientific Corporation |
| 2:17-cv-01242 | Evans v. Boston Scientific Corporation |
| 2:17-cv-01862 | Faso et al v. Boston Scientific Corporation |
| 2:17-cv-02646 | Gottfreid v. Boston Scientific Corporation |
| 2:17-cv-00294 | Grigg v. Boston Scientific Corporation |
| 2:17-cv-01977 | Hardwick v. Boston Scientific Corporation |
| 2:17-cv-02641 | Harrison-Hood v. Boston Scientific Corporation |
| 2:17-cv-01900 | Hauff et al v. Boston Scientific Corporation |
| 2:17-cv-02734 | Henjum v. Boston Scientific Corporation |
| 2:17-cv-02508 | Jeter v. Boston Scientific Corporation |
| 2:17-cv-00047 | Long v. Boston Scientific Corporation |
| 2:17-cv-01959 | Lowrie v. Boston Scientific Corporation |

| | |
|---|---|
| 2:17-cv-00568 | Mahnke v. Boston Scientific Corporation |
| 2:17-cv-02459 | Mallory v. Boston Scientific Corporation |
| 2:17-cv-02461 | Martin v. Boston Scientific Corporation |
| 2:17-cv-02738 | Martin v. Boston Scientific Corporation |
| 2:17-cv-02739 | Martinez v. Boston Scientific Corporation |
| 2:17-cv-02417 | Masterson v. Boston Scientific Corporation |
| 2:17-cv-02596 | McFolling v. Boston Scientific Corporation |
| 2:17-cv-02462 | McSween v. Boston Scientific Corporation |
| 2:17-cv-02467 | Melrose v. Boston Scientific Corporation |
| 2:17-cv-02742 | Morales v. Boston Scientific Corporation |
| 2:17-cv-02597 | Morgan v. Boston Scientific Corporation |
| 2:17-cv-00534 | Notestine v. Boston Scientific Corporation |
| 2:17-cv-02416 | Palmer v. Boston Scientific Corporation |
| 2:17-cv-02093 | Pamensky Murray v. Boston Scientific Corporation |
| 2:17-cv-02633 | Pierson et al v. Boston Scientific Corporation |
| 2:17-cv-02470 | Porter v. Boston Scientific Corporation |
| 2:17-cv-02477 | Pouncy v. Boston Scientific Corporation |
| 2:17-cv-01939 | Price v. Boston Scientific Corporation |

| | |
|---|---|
| 2:17-cv-02598 | Reid v. Boston Scientific Corporation |
| 2:17-cv-02599 | Reyes v. Boston Scientific Corporation |
| 2:17-cv-02600 | Rinaldi v. Boston Scientific Corporation |
| 2:17-cv-02107 | Ross v. Boston Scientific Corporation |
| 2:17-cv-01938 | Schroder v. Boston Scientific Corporation |
| 2:17-cv-02745 | Shaw v. Boston Scientific Corporation |
| 2:17-cv-02481 | Shepard v. Boston Scientific Corporation |
| 2:17-cv-01845 | Shiflet v. Boston Scientific Corporation |
| 2:17-cv-02483 | Smith v. Boston Scientific Corporation |
| 2:17-cv-02551 | Solomon v. Boston Scientific Corporation |
| 2:17-cv-02244 | Speed v. Boston Scientific Corporation |
| 2:17-cv-02553 | Spencer v. Boston Scientific Corporation |
| 2:17-cv-02787 | Stapf v. Boston Scientific Corporation |
| 2:17-cv-00528 | Sustaita v. Boston Scientific Corporation |
| 2:17-cv-00536 | Sutiff v. Boston Scientific Corporation |
| 2:17-cv-01241 | Tigner v. Boston Scientific Corporation |
| 2:17-cv-02450 | Wallace v. Boston Scientific Corporation |
| 2:17-cv-02568 | Welsh v. Boston Scientific Corporation |

| | |
|---|---|
| 2:17-cv-02106 | Wilson v. Boston Scientific Corporation |
| 2:17-cv-02571 | Wittenborn v. Boston Scientific Corporation |
| 2:17-cv-01098 | Zeiter v. Boston Scientific Corporation |